# HARRY B. WOLF

## *vs.*

## STATE OF MARYLAND.

### *Obstruction of Justice—Conspiracy—Evidence—Leading Questions.*

Under the State Constitution, the Court of Appeals has no jurisdiction to determine as to the legal sufficiency of the evidence upon which the verdict of guilty was rendered.      p. 492

On a prosecution for conspiracy to obstruct the administration of justice by false statements to be made by one of the conspirators, discrediting a confession, made by one of the participants in a recent murder, implicating another of the conspirators, it was proper to admit evidence as to the activities of the police in connection with the murder, and of the impending prosecution therefor.      p. 494

It was also proper to admit evidence as to the confession sought to be discredited, and that it had been given such publicity as to justify the inference that it had come to the knowledge of the alleged conspirators before the interview at which the conspiracy was said to have had its inception.      p. 495

On a prosecution of a member of the bar, with others, for conspiracy to obstruct the administration of justice, in connection with a possible criminal prosecution of one of the other conspirators, the admission of evidence that such member of the bar had previously acted as attorney for the latter was unobjectionable.      p. 495

The alleged purpose of the conspiracy being to have one of the conspirators obtain the confidence of the police by leading them to a spot where certain articles connected with the murder had been concealed, and then to tell the police that, at the time of their concealment, the person who subsequently made a confession stated that he intended to "frame" a person whom he did implicate, evidence that such conspirator, who was to make

the statement to the police, was with alleged participants in the murder when they concealed such articles, was admissible as describing conditions directly related to the conspiracy charged.                                                                    p. 495

Evidence as to declarations by one of defendants, a member of the bar, though made some days before the inception of the alleged conspiracy, as to his belief that the murder was not committed by local men, and as to his willingness to aid the police in locating the persons guilty of the crime, was not altogether immaterial, it reflecting upon his relation to the general situation with respect to which the conspiracy was alleged to have developed.                                                                p. 496

That one of the alleged conspirators, a member of the bar, visited the police station and there saw persons charged with the murder, whom he expressed a desire to have released as not being guilty, and that he expressed to the police interest in others arrested for the crime, and released, was admissible as showing an interest on his part which might reflect upon the question of motive for his alleged participation in the conspiracy to obstruct justice.                                           p. 497

A question asked of a witness, testifying in regard to a conversation, as to "what was said, if anything, by anybody," as to a certain matter, was not objectionable as leading, it not admitting of an answer in either an affirmative or negative form, and the purpose of the inquiry being to ascertain what, if anything, was said on the subject to which it directed attention.                                                                       p. 498

That, on a prosecution for conspiring to obstruct the administration of justice in connection with a murder, a witness was asked a leading question as to whether one of defendants, on a certain occasion, referred to a confession made by one of the participants in the murder, *held* not to have prejudiced the defense, since it appeared by other testimony that at that time the confession was known to such defendant.                      p. 499

The trial court has a discretion as regards relaxing the rule as to leading questions.                                              p. 499

On a prosecution for conspiracy to commit a crime, evidence as to the acts and declarations of one of defendants in pursu-

ance of the alleged conspiracy is admissible against his code-
fendant, provided there is *prima facie* evidence of the conspir-
acy, even though this latter evidence is strongly contradicted.

p. 500

Evidence that appellant, one of three persons charged with a
conspiracy to obstruct the administration of justice by discred-
iting a confession, made by a participant in a murder, impli-
cating another of the defendants, referred to such confession
in a talk with a police officer at appellant's home shortly before
the interview at which the conspiracy was entered into, was
admissible to show that at the time of such interview appellant
knew of the confession, although the officer's testimony inci-
dentally showed that, in the talk with appellant, the latter failed
to disclose the presence in the house at that time of the other
defendants, with whom he was alleged subsequently to have
entered into the conspiracy. pp. 501, 502

The admission of evidence as to the acts and declarations of
appellant after the night on which the conspiracy was alleged
to have been conceived, which were consistent with his inno-
cence rather than his guilt, was not ground for reversal. p. 503

No reversible error having been found in any of the rulings
on the admissibility of evidence, the Court of Appeals has no
authority to disturb the judgment and verdict on the theory
that the judges who tried the case reached the wrong conclu-
sions as to the facts. p. 504

With the conclusion of the trial judges, sitting as a jury, and
of the Supreme Bench of Baltimore City, which heard the
motion for a new trial, as to the existence of evidence corrob-
orating the testimony of an accomplice, the Court of Appeals
has no right to interfere. pp. 504, 505

While one accused of crime cannot rightfully be convicted
upon the uncorroborated testimony of an accomplice, the cor-
roborative evidence need not be sufficient in itself to convict, the
requirement being merely that it should tend to sustain the
charge with respect to some of the material points involved.

p. 504

*Decided June 26th, 1923.*

Appeal from the Criminal Court of Baltimore City (GORTER, C. J., and BOND, DUFFY, STANTON, and STEIN, JJ.).

Criminal proceedings against Harry B. Wolf, Walter Socolow and John Keller. From a judgment of conviction defendant Wolf appeals. Affirmed.

The cause was argued before BOYD, C. J., BRISCOE, THOMAS, PATTISON, URNER, and OFFUTT, JJ.

*Samuel K. Dennis* and *F. Neal Parke,* with whom were *Thomas H. Robinson, H. Webster Smith,* and *Gerald W. Hill* on the brief, for the appellant.

*Alexander Armstrong, Attorney General,* and *Lindsay C. Spencer, Assistant Attorney General,* with whom was *Robert F. Leach, Jr., State's Attorney for Baltimore City,* on the brief, for the appellee.

URNER, J., delivered the opinion of the Court.

There are one hundred and twenty exceptions in the record presented on this appeal. They relate to the admissibility of evidence in a trial which resulted in the conviction of the appellant under an indictment charging him and others with having engaged in a conspiracy to obstruct the administration of justice.

The issues of fact and law in the case were tried before CHIEF JUDGE GORTER, and ASSOCIATE JUDGES BOND, DUFFY STANTON and STEIN of the Supreme Bench of Baltimore City. It is earnestly contended that their decision against the appellant was improperly influenced by the admission of the testimony to which the numerous exceptions refer. In the brief submitted by the appellant's able counsel it is further insisted that, regardless of the exceptions in the record, there was such manifest error in the conviction, in view of all the evidence, as to justify a reversal of the judgment and a remand of the case for a new trial.

This Court has no authority to decide as to the appellant's guilt or innocence. That duty and responsibility rested upon the five judges before whom, as a jury, the case was tried in the lower Court. Under the Constitution of our State, and in their capacity as a jury, they were "the judges of law, as well as of fact" in the case. It is therefore, not within our jurisdiction, as an appellate tribunal, to determine as to the legal sufficiency of the evidence upon which the verdict was rendered. *Weeks* v. *State*, 126 Md. 223; *Jessup* v. *State,* 117 Md. 119. The only judicial concern we can have, with respect to the evidence, is to ascertain whether any ruling of the trial court as to the admissibility of any portion of it was erroneous and tended to prejudice the appellant's interests.

In the indictment under which the appellant was tried it is charged that he conspired with John Keller and Walter Socolow to convey certain misleading information to police officers and to the State's Attorney of Baltimore City for the purpose of obstructing the prosecution of Socolow and others for the murder of William B. Norris, by discrediting a confession obtained from Frank L. Allers, one of the participants in the robbery in the course of which the homicide occurred. Those implicated by the confession, besides Allers himself, were Socolow, John L. Smith, Charles P. Carey and James Hart. When the confession was made Socolow and Hart were still at large. Keller had no part in the robbery or murder, but subsequently aided Socolow and Hart while they were evading arrest. The plan of deception, which the appellant was alleged to have agreed to and promoted, was to have Keller first secure the confidence of the prosecuting officers by conducting Police Captain Leverton to the place where the cash box taken in the robbery, and the license tags of the automobile used by the bandits, had been secreted, and then make the statement that he had heard Allers say he was "framing" Socolow. The suggestion of this scheme is said to have been made by Socolow, and to have been accepted by

the appellant and Keller, in an interview at the appellant's home on the evening of the day on which the confession of Allers appeared in the newspapers. On the following day Keller met Captain Leverton at the appellant's law office and went with the officer to a pond from which the cash box and license tags sought for were recovered. Soon afterwards, at the Central Police Station, Keller told Inspector Hurley and Mr. O'Connor, Deputy State's Attorney, that he heard Allers say: "Now is the time to frame Socolow, Wiggles (meaning Smith) and Carey." This statement is proved to have been false, and Keller testified, in effect, as a witness for the State, that it was planned in the interview with the appellant and Socolow on the occasion we have mentioned. There was a positive contradiction of Keller on this point by the appellant and by Socolow in their testimony.

The admissibility of the evidence with which the exceptions are concerned must, of course, be considered with particular reference to the precise nature of the charge sought to be proved. The specific purpose of the conspiracy into which the appellant is accused of having entered was to obstruct justice by means of a false and misleading statement to be made to the prosecuting officers by one of the conspirators. Any evidence having a legitimate tendency to support that accusation was not subject to a valid exception.

In discussing and disposing of the exceptions we shall follow generally the order and classification adopted in the appellant's brief.

There are ten exceptions which relate to the admission of evidence that, in the interval between the murder of Mr. Norris, on August 18th last, and the time of the interview of Keller and Socolow with the appellant, which occurred on the night of August 23rd, the police had been searching for Socolow, Hart, Smith and Lewis, who were suspected of having participated in the crime, that the automobile used by those who committed it had been located, that Smith and Lewis had been arrested, that Allers had voluntarily surren-

dered and had confessed, that on the afternoon of August
23rd his confession had been published in the Baltimore
Evening Sun, and that the appellant had represented Soco-
low in a criminal case in April, 1921.

In order that the significance of the alleged conspiracy
might be understood it was proper that the State should
prove the conditions to which it related. The principal facts
to which the evidence just referred to was directed were
averred in the indictment. They were proved, as they had
been alleged, for the purpose of presenting the case in its
proper perspective. To support the theory of the indict-
ment, that the appellant conspired to defeat the prosecution
of Socolow, and his associates in the robbery and murder
of Mr. Norris, it was permissible to offer evidence of the
fact that such a prosecution was impending. As the appel-
lant was charged with having conspired to discredit a confes-
sion upon which the State would rely, it was material to
prove that the confession had been made and had been given
such publicity as to justify the inference that it had come
to the appellant's knowledge before the interview in which
the conspiracy is said to have had its inception. The evi-
dence that the appellant had previously acted as Socolow's
attorney was unobjectionable.

There are three exceptions in the second group to be con-
sidered. They refer to admitted testimony of Keller to the
effect that he was with Hart and Socolow on the night of
August 20th and went with them to a garage, where the
money box and license tags already mentioned had been con-
cealed, and helped them to take those articles to the pond
from which they were afterwards recovered by the police with
his aid. This testimony describes conditions directly related
to the conspiracy charged. The association of Keller with
the men who disposed of the cash box and license tags, and
his knowledge of the place where they had been deposited,
were facts to be used, according to the State's theory, in the
promotion of the unlawful project with which it proposed to

prove the appellant to have been identified. It was to those facts that the statement made by Keller to the police primarily had reference. He testified that they were narrated to the appellant in the interview at his home. The alleged suggestion by Socolow, in which the conspiracy is said to have originated, was to have Keller tell the police that it was Allers whom he accompanied to the garage and the pond when the cash box and license tags were disposed of, and the declaration to be attributed to Allers, as to his intention to "frame" Socolow, was to be reported as having been made on that occasion. It seems clear to us that the evidence on this subject was competent.

Seven exceptions relate to testimony of Police Commissioner Gaither as to offers made by the appellant, on the day of the murder of Mr. Norris, and on the following day, to aid the Police Department in discovering the perpetrators of the crime, and as to a statement by the appellant of his belief that it was not committed by local men but by certain persons from other cities whose presence in Baltimore he had heard of and whose movements he regarded as suspicious. There are two exceptions to testimony of a representative of the Baltimore Sun that at his request, on the night of August 18th, the appellant promised to give any aid in his power to the efforts being made to locate and arrest the men guilty of the murder. The declarations of the appellant, to which the nine last noted exceptions relate, were made some days before the occasion for the alleged conspiracy had arisen or could have been anticipated. The effect of the testimony as to those declarations was to prove an interest on the part of the appellant which appears to have been free of any ulterior motive and which did not tend to support the specific charge with which he was confronted at the trial. It could not be reasonably inferred from his offer of assistance to the Police Department, and his suggestion as to the probability of the crime having been committed by men who had come from other cities, that he was entertaining the thought of

entering into a scheme which was only made possible by the unforeseen conditions which subsequently arose. But we are unable to hold that this evidence was altogether immaterial, as it reflected upon the appellant's relation to the general situation with respect to which the conspiracy is alleged to have developed. In any event we cannot see how this testimony injured the appellant. It referred to his own conduct, and was apparently consistent with his innocence. Its admission certainly affords no ground for a reversal.

There were six exceptions to testimony of police officials that the appellant was at the Central Police Station on the day after the murder and saw Smith and Lewis, who had been arrested the previous afternoon, and that he expressed an interest in having them released on the ground that he did not believe them to be guilty. Another exception refers to the proof of a statement by the appellant to one of the officers, on the afternoon of the day succeeding the crime, in which he criticized the arrests made in the case as "pinhead policing." Other expressions by the appellant to police officials indicating an interest in certain men who had been arrested and released, and his remark to Captain Burns, on the afternoon of August 23rd: "I may have something for you tomorrow," were the subject of testimony to which four exceptions were directed. There is nothing in the record to suggest that when the statement just quoted was made the appellant had any reason to expect that some hours later he would be visited at his home by Keller and Socolow and would have an interview in which a plot to deceive the prosecuting officers might be proposed. But the acts and declarations to which the eleven exceptions of this group refer were provable as manifesting an interest which might reflect upon the question of motive for the appellant's alleged participation in the scheme which the indictment describes. Apart from this possible effect the testimony would be altogether harmless even though it be regarded as immaterial. It was for the trial court to determine as to the weight of this proof. In our opinion it was admissible.

It was testified by Keller that when he and Socolow called at the home of the appellant on the night of August 23rd, the latter greeted Socolow with the exclamation: "My God, boy, what are you doing here," and then asked "Who is this kid; is this Hart?" and Socolow replied: "No, it is a kid by the name of Kelly, wanted for an automobile case." They were then taken to the kitchen to wash and be given some food. Afterwards they went out on a porch where they were rejoined by the appellant, who said: "That was a brutal thing you did, Socolow." According to Keller's testimony Socolow admitted his guilt and described the homicide, though the appellant and Socolow, on the contrary, testified that he protested his innocence, and then the appellant went to another entrance to see a detective who had called. In reference to what transpired upon the appellant's return the testimony of Keller proceeds as follows:

"Q. Now, when Mr. Wolf came back what occurred; what did Walter (Socolow) say to him or Mr. Wolf say to Walter? A. Asked him how would this sound: how would this do? Q. What was it he said there? A. I said I heard Allers say he was framing Socolow. I just said to Socolow what would be all right for me to say. Then he told me to say instead of Hart and Socolow taking me to the box, Frank Allers took me there. Then the telephone rang. Q. Was anything said about the name of Allers? A. Chicago. Q. Then the telephone rang? A. Yes, sir. Q. What happened then? Did Mr. Wolf sit there or go out; A. Went to the telephone. Q. And when he came back what happened; A. He said: 'I didn't get you; tell me it again.' And so I told him again. Q. Now, what did you tell him? A. Told him the same thing I told him the first time. Q. What did you tell him the first time? A. About Allers taking me to the box instead of Hart and Socolow, and that I heard Allers say he was framing Socolow. Q. Now, what was said, if anything, by anybody, about having nerve or not having nerve?"

To this question an objection was made on the ground that it was leading. The objection being overruled, the witness

quoted the appellant as having said: "If you have got the nerve, it is all right."

A leading question is one which embodies a material fact and admits of a simple affirmative or negative answer. *Lee* v. *Tinges,* 7 Md. 234; *Walker* v. *Baldwin,* 106 Md. 633; *B. & O. R. R. Co.* v. *Black,* 107 Md. 653. The question objected to is not within that description. It does not admit of an answer in either an affirmative or a negative form. The purpose of the inquiry was to ascertain what, if anything, was said on the subject to which it directed attention. This was a permissible method of developing the testimony.

Another question which is said to have been leading, propounded to Keller, was as follows: "Now, when you got to Wolf's house did Walter say anything about Allers having confessed or squealed, or did Wolf say anything about it? Was anything said about that?" The answer was: "I think Socolow said Allers confessed." The form of this question was leading as it admitted of a simple affirmative or negative reply as to the material fact which it embodied. But it could not have prejudiced the defense because it was proved by Detective Hammersla, who called at the appellant's house during, but in ignorance of, the visit there of Keller and Socolow, that he discussed with the appellant the effect of the confession of Allers which had just been published, and it is not denied by the appellant that the confession had then come to his knowledge. Besides, the trial court had a discretion, in regard to relaxing the rule as to leading questions, which it does not appear to have abused with respect to the one just quoted. *B. & O. R. R. Co.* v. *Black, supra.*

Nineteen exceptions relate to testimony as to the acts and declarations of Keller after the interview in which the conspiracy is alleged to have originated and out of the appellant's presence. It was proved that on the morning of August 24th, Keller went to the appellant's office and was introduced to Captain Leverton, with whom he went in an automobile to the pond into which the money box and license

tags had been thrown, and on the way told the officer that on the night of August 20th he was accosted by two men who induced him by threats and promise of payment to accompany and assist them in obtaining the box and tags from a garage where they had been left and in taking them to the pond. Subsequently, according to the evidence, Keller stated to officers in charge of the case that while in the company of the two men he heard one of them, whom he identified as Allers, make the statement in reference to "framing" Socolow, Smith and Carey, to which we have already alluded. All of this testimony is said to have been inadmissible on the theory that no *prima facie* case of conspiracy, against the appellant, was proved at any period of the trial. It is unquestionably true that, under the law, the appellant could not be held to be affected by the acts and declarations of Keller, out of his presence, unless they were in pursuance of a common design. *Lawrence* v. *State,* 103 Md. 17; *Bloomer* v. *State,* 48 Md. 521; *Hays* v. *State,* 40 Md. 633. The objection to the testimony on that subject would necessarily prevail if no evidence could be found in the record having the *prima facie* effect of proving a conspiracy between the appellant and Keller to accomplish the purpose to which the subsequent conduct and statements of the latter were apparently directed. But we are unable to avoid the conclusion that there is evidence in the record having such a tendency. The strong contradiction with which it is met does not disentitle the State to have it given legal effect upon the question as to the admissibility of the testimony now being considered. It was testified, in substance, that the appellant assented to a proposal to have Keller make the misleading statement which he is proved to have actually made to the police and prosecuting officers, and there was evidence that action on the part of the appellant provided the opportunity which Keller utilized for that purpose. Captain Leverton stated in his testimony that on the night of August 23rd he received a request by telephone from the appellant to call at his office the

next morning. An appointment was made by the appellant
for Keller to be there at the same time. The result of this
arrangement was that Keller was brought into communica-
tion with Captain Leverton and proceeded to carry out a
scheme of deception which he asserts the appellant had ap-
proved. As we have no right to exclude from consideration
the testimony referred to, we cannot hold that there was no
*prima facie* evidence of the conspiracy charged in the indict-
ment, and, in our opinion, therefore, the objections to Kel-
ler's acts and statements in pursuance of the alleged scheme
were properly overruled.

An exception upon which counsel for the appellant lay
great stress relates to the testimony of Detective Hammersla
as to his call at the appellant's home during the time of
Socolow's and Keller's visit. The witness narrated a con-
versation he had with the appellant on that occasion, testi-
fying in part as follows: "Allers had confessed to the mur-
der of Norris and had told the whole story; it was all pub-
lished in the papers; and I said to him, 'What do you think
of the latest development in the Norris case?' He said,
'Harry, I am the worst fooled man in Baltimore.' He said,
'No man could possibly have made me believe it was local
boys who committed that crime; I didn't think they had
nerve enough to do it.' 'Well,' I said, 'you are sure that
they did it now, aren't you?' He said, 'Yes, absolutely.' * * *
And I asked him then the question, was he going to defend
any of them. He said, 'No, I will not.' " The remainder
of the narrative of the witness, to which exception was taken,
need not be quoted as it does not affect the question to be
decided. It is not contended that the appellant was injured
by the testimony of Detective Hammersla as to anything said
in the conversation to which the exception refers, but it is
said that prejudice to the defense resulted from the disclosure
of the appellant's omission during the interview to report
the fact that Socolow and Keller were then in his house. A
strongly fortified argument has been made in support of the

proposition that the appellant, with due regard to professional honor and propriety, could not have abused the confidence of persons who came to him for counsel by delivering them to an officer of the law. It is not suggested on behalf of the State that the appellant's conduct in this respect is subject to censure. The proof upon which the State relied shows that the appellant advised Socolow to surrender to the police, and that there was no relation between the conspiracy charged in the indictment and the appellant's silence as to the presence of Socolow and Keller in his house during his talk with the detective. When that conversation occurred the alleged plan of Socolow to have Keller discredit the confession of Allers had not been suggested. The fact that the appellant did not reveal the presence of Socolow and Keller could have no legitimate tendency to support the theory that he subsequently entered into an unlawful agreement which the State itself proves he did not originate. It is hardly conceivable that the judges who rendered the verdict in the case were influenced in their conclusion as to the existence of a conspiracy by conduct of the appellant prompted by his conception of his professional duty to the person who is said to have *afterwards* suggested the unlawful project. But the exception could not properly have been sustained because the testimony to which it relates was inherently admissible. It tended to show that the appellant was aware, at the time of his interview with Keller and Socolow, that Allers had made a confession implicating Socolow in the murder of Mr. Norris. The possession of such knowledge by the appellant at that time was a fact which it was proper for the State to prove. Being admissible for that purpose, the testimony excepted to could not have been excluded merely because it made apparent the particular conduct of the appellant with respect to which the objection is mainly urged.

There are twenty-four exceptions to evidence in regard to acts and declarations of the appellant after the night on which the conspiracy is said to have been conceived. Some of these

exceptions refer to testimony as to the appellant's efforts to
see Keller after he had said that the statement he had made
about Allers was false and the appellant had been accused of
having instigated the attempt to embarrass the prosecution.
Other exceptions relate to answers of the appellant to in-
quiries by representatives of the press as to his attitude to-
wards the charges made against him on the basis of Keller's
statements. It is urged that none of the testimony to which
the exceptions of this class relate has a tendency to convict
the appellant of the offense for which he was indicted. The
conduct and expressions described appear to be susceptible
of a construction which would be consistent with innocence
rather than with guilt. But the question to be determined
is whether in the admission of this evidence the trial court
committed reversible error. If the acts and utterances proved
be regarded as wholly devoid of any sinister meaning, they
were not for that reason necessarily irrelevant, and there was
no injury to the appellant in the admission of the proof on
that subject. He could not be awarded a new trial on the
ground that his own acts and words, consistent with inno-
cence, had been considered by the judges to whom the case
was submitted. In our opinion these exceptions present no
adequate reason for a reversal.

The only other exceptions discussed in the brief for the
appellant were two which referred to the repetition by Cap-
tain Leverton to a newspaper reporter, out of the appellant's
presence but at his instance, of the story which Keller had
told about meeting two men, on the occasion of his assisting
in the disposition of the cash box and license tags, and one ex-
ception to testimony of Captain Burns that on August 24th,
he went before the Grand Jury in reference to the charge
against Smith, Carey, Socolow, Hart, Allers and others. It
is clear that this evidence could have had no prejudicial effect
upon the defense, and any error in its admission was there-
fore not reversible.

The rulings on eighty of the one hundred and twenty ex-
ceptions in the record have now been discussed. The remain-

ing forty exceptions were not specifically urged in the appellant's brief for the reason there stated that those argued sufficiently present the points upon which he relies. In regard to none of the exceptions have we discovered any ground for deciding that reversible error was committed.

The argument was partly directed to the question whether the testimony of Keller as to the existence of a conspiracy had been corroborated. It was argued also that his credibility was conclusively impeached. No reversible error having been found in any of the rulings on the admissibility of evidence, we have no authority to disturb the judgment and verdict on the theory that the judges who tried the case reached the wrong conclusion as to the facts. While the veracity of Keller was strongly attacked, we cannot deny to the trial judges the right to give credence to his story. With their conclusion upon the question of corroboration we are not at liberty to interfere. No one accused of a crime could rightfully be convicted upon the uncorroborated testimony of an accomplice. But the corroborative evidence need not be sufficient in itself to convict. The requirement is that it should tend to sustain the charge with respect to "some of the material points involved." *Luery* v. *State,* 116 Md. 294. In the case just cited each of several defendants, under indictment for receiving stolen goods, made a motion, after the testimony had been taken, that a discharge be ordered "on the ground that upon the uncorroborated evidence of accomplices connecting the defendants with a crime the law does not permit a conviction to stand." That case was tried before a jury, and this Court said, in the opinion delivered by CHIEF JUDGE BOYD: "There is no practice in this State which would have authorized the Court to discharge the defendants as requested in the motion, and it was properly overruled." It was said in the opinion that "inasmuch as under our system the Courts do not charge the juries in criminal cases, and the juries are made judges of the law and of the facts, one effective way of affording relief is for the trial court not

to permit a conviction to stand if based *exclusively* on such testimony, if a motion for a new trial is seasonably made, or the trial courts might well adopt the practice of granting prayers advising or cautioning juries against conviction without corroboration." In the trial of the present case the judges themselves sat as a jury, and a motion for a new trial was made and denied. It cannot be doubted that the question as to the tendency and effect of the evidence to corroborate the testimony of the alleged accomplice was given full consideration by the judges who rendered the verdict, and by the Supreme Bench of Baltimore City in hearing and disposing of the motion for a new trial. As to the issue of guilt or innocence determined by the verdict, or as to the propriety of the ruling on the motion for a new trial, the appeal does not authorize us to pass judgment.

The record shows that a demurrer to the indictment was filed and overruled, but no reference to the demurrer is made in the appellant's brief, and we think the action of the court upon it was clearly correct.

*Judgment affirmed, with costs.*