## COLEMAN *v.* STATE

[No. 110, October Term, 1955.]

*Decided March 15, 1956.*

The cause was argued before BRUNE, C. J., and DELA-PLAINE, COLLINS, HENDERSON and HAMMOND, JJ.

*Fred E. Weisgal,* with whom was *Stanley Sollins* on the brief, for the appellant.

*Frank T. Gray, Assistant Attorney General,* with whom were *C. Ferdinand Sybert, Attorney General, C. Osborne Duvall, State's Attorney for Anne Arundel County,* and *Clarence L. Johnson, Assistant State's Attorney,* on the brief, for the appellee.

COLLINS, J., delivered the opinion of the Court.

This is an appeal by William A. Coleman, appellant, from a judgment and sentence, of the trial court sitting without a jury, for breaking and entering the store of Consumers Buying Association, Inc., (Consumers), with intent feloniously to steal certain property therein, in Glen Burnie, Anne Arundel County.

The facts of the case are substantially as follows. Robert W. Griffith, a police officer, testified that about

1:30 A. M. on April 7, 1955, he observed a truck proceeding the wrong way on a one way street in Glen Burnie. He waved to the truck to stop and the driver of the truck tried unsuccessfully to pin him between his car and the truck. The truck then proceeded at a fast rate of speed on that "dead end" street. When the "dead end" was reached four persons jumped out of the truck and ran through the woods. The truck contained five television sets, three portable record players, two portable radios, one table model radio and a lady's brown suitcase. He called a number of police cars to assist him in finding the four people who jumped out of the truck. About a half hour later Loretta Cox, and about three-quarters of an hour later Robert Dellavox, were both picked up in the vicinity. Officer Griffith could identify only one occupant of the truck at the time it passed him, that being Harry Myers.

Mr. Morton Forman, an employee of Consumers, testified that the store was closed about 6 P. M. on April 6, 1955. He returned to the store the following morning about 8:45 A. M. and noticed that articles were missing and there were marks at the edge of the rear door. He later went to the Ferndale Police Station where he identified the articles which had been found in the truck by Officer Griffith as the property of Consumers.

Loretta Cox, sixteen years of age at the time the crime was committed and seventeen at the time of the trial below on August 26, 1955, testified that she knew Harry Myers and William A. Coleman, the appellant. At about 11 P. M. on April 6, 1955, she was on Linden Avenue in Baltimore. Myers, Coleman and Dellavox drove up in a truck and asked her to go for a ride. She had known these boys previously. They drove around for a short time and they then drove to Glen Burnie. They parked the truck back of a store and the boys went in and brought out some coffee. They talked there together about twenty minutes. Robert Dellavox remained in the truck with her. Myers and Coleman got out and brought back boxes which they put in the back of the truck. She found out

later that these contained television sets. She did not do anything. She could not carry the boxes. When asked whether she knew what they were doing when they left the truck, she replied: "I didn't know for sure, but after I heard the crash and saw them come back * * * They broke in. * * * Well, I went back later, it was a window or a door." When asked "Had there been any discussion between you and either of these boys, or any of the boys among themselves in your presence before they left you in the truck?", she replied: "They were talking about televisions, but I didn't hear anything special." After the boxes were placed in the truck they drove off. As they were driving the wrong way on the street the officer told them to stop. Myers, who was driving the truck, put on speed. She was on the front seat with Coleman and Myers and Dellavox was in the rear. "The truck must have wrecked or something. We jumped out and started running." She was picked up by the police about forty-five minutes later. On cross examination, when asked what she was tried for in Anne Arundel County, she stated: "breaking and entering." She said she did not plead guilty. She admitted that she did not like Coleman very much. "He was rotten to me after this mess." She later said that she was not formally charged with any crime but was tried in the Juvenile Court in Anne Arundel County for being a delinquent child. She had never been tried in any court other than the Juvenile Court in Anne Arundel County. Officer Griffith, when recalled, testified that she was never charged with any crime but was tried in the Juvenile Court. There is nothing in the record here to show that she was ever tried for breaking and entry or what disposition was made of the case in the Juvenile Court.

The appellant contends that there was not sufficient evidence to convict him because he was convicted solely as the result of the uncorroborated testimony of Loretta Cox, an accomplice to the crime charged against him. The State admits in this case that the only evidence against the appellant was that of Loretta Cox.

Of course, unless there is some testimony to corroborate an accomplice, the law does not permit a conviction to stand. *Lanasa v. State,* 109 Md. 602, 613, 71 A. 1058; *Luery v. State,* 116 Md. 284, 81 A. 681; *Wolf v. State,* 143 Md. 489, 504, 122 A. 641; *Folb v. State,* 169 Md. 209, 211, 181 A. 225; *Myerson v. State,* 181 Md. 105, 112, 28 A. 2d 833; *Juratovac v. State,* 193 Md. 561, 564, 69 A. 2d 247; *Watson v. State,* 208 Md. 210, 217, 117 A. 2d 549, 552. The primary question before the trial judge was whether Loretta Cox was an accomplice of the appellant.

The crime for which the appellant was convicted, Code, 1951, Article 27, Section 38, statutory burglary, is a misdemeanor. *Bowser v. State,* 136 Md. 342, 110 A. 854; *Hickman v. Brady,* 188 Md. 103, 52 A. 2d 72; *State ex rel. Zukowski v. Warden,* 193 Md. 721, 68 A. 2d 675; *Debinski v. State,* 194 Md. 355, 71 A. 2d 460. The offense for which the appellant here was convicted being a misdemeanor, all accessories were chargeable as principals. *Roddy v. Finnegan,* 43 Md. 490, 503, 504; *Seward v. State,* 208 Md. 341, 118 A. 2d 505.

In the case of *Anello v. State,* 201 Md. 164, 93 A. 2d 71, the appellant was convicted of larceny of use of property which was a misdemeanor. It was there said: "It is clear that no one, whether principal perpetrator or aider or abettor, can violate this statute unless he possesses criminal intent. The legal definition of the word 'aider' is not different from its meaning in common parlance. It means one who assists, supports or supplements the efforts of another. The word 'abettor' means in law one who instigates, advises or encourages the commission of a crime. Thus the word 'abet' may import that one is present at the commission of a crime without giving active assistance. *Creasy v. Commonwealth,* 166 Va. 721, 186 S. E. 63; *State v. Epps,* 213 N. C. 709, 197 S. E. 580; *State ex rel. Martin v. Tally,* 102 Ala. 25, 15 So. 722, 737; *State v. Western Union Telegraph Co.,* 13 N. J. Super. 172, 80 A. 2d 342, 355. * * * To be an aider or abettor it is not essential that there be a prearranged concert of action, although, in the absence of such action, it is essen-

tial that one should in some way advocate or encourage the commission of the crime. *McKinney v. Commonwealth,* 284 Ky. 16, 143 S. W. 2d 745." In *State ex rel. Wisconsin Development Authority v. Dammann,* 228 Wis. 147, 277 N. W. 278, 280 N. W. 698, it was held by the Supreme Court of Wisconsin that the word "encourage" had no technical meaning. The cases of *United States v. Strong,* (D. C.), 263 F. 789, and *United States v. Ault,* (D. C.), 263 F. 800, 811, adopted Webster's definition of "encourage" to mean "giving courage to; inspiring with courage, spirit, or hope." *Seward v. State, supra,* and cases there cited.

It is stated in 2 *Wharton, Criminal Evidence,* 229, Sec. 448, *et seq.* (12th Ed.) : "An accomplice is a person who knowingly, voluntarily, and with common intent with the principal offender unites with him in the commission of the crime. The term 'accomplice' does not include a person who has guilty knowledge, or is morally delinquent, or who was even an admitted participant in a related but distinct offense. To constitute one an accomplice, he must perform some act or take some part in the commission of the crime or owe some duty to the person in danger that makes it incumbent on him to prevent its commission. An accomplice is 'one culpably implicated in, or who unlawfully co-operates, aids, abets, or insists in, the commission of the crime charged.'

"The generally accepted test as to whether a witness is an accomplice is whether he himself could have been convicted for the offense, either as principal or accessory."

In *Anello v. State, supra,* the accused was convicted of unlawfully carrying away a Cadillac automobile out of the custody and use of the owner. The police pursued the automobile and three men jumped out and ran. Anello was one of the men caught. He claimed that he did not know or suspect that the car was not in the legal custody of the driver until the driver jumped out of the car. In that case the appellant had had considerable experience in the unauthorized use of automobiles. He had been convicted of unlawfully taking nine cars. He had also

been convicted on two charges of burglary and for disorderly conduct. The statements he made to the police and to the court were inconsistent and incredible. This Court held that it would be straining one's credulity to believe that this man, with his criminal record, could get into an expensive sedan after midnight, with a man he claimed he knew only by the name of Sam, and ride in it until two o'clock in the morning without having any criminal intent. Also the facts that the car was "hot-wired" and the man ran supported the inference that the appellant knew the car had been unlawfully taken. We there held that the trial judge was not clearly erroneous in convicting the appellant.

In *Seward v. State, supra,* the accused, who was convicted of malicious destruction of property, knew all about the bombs which were used, who was making them and who was setting them off. He also knew that one of the boys in the car had bombs with him. The bombing was discussed and contemplated. At one time he got out of the car when the intention was to place a bomb in a trash can. Instead of leaving the other boys, he returned to the car which was placed in a position for easy exit while the boy with the bomb in full view took two or three steps and threw it in a water tower. Appellant remained in the car in order to hear the explosion. We there held that we could not say that the trial judge was clearly wrong in finding that the appellant in some way encouraged the commission of the crime.

In *Watson v. State, supra,* Watson was convicted of the murder of a baby. It was claimed that Polly Conway, one of the witnesses, was an accomplice and that the accused could not be convicted upon her uncorroborated testimony. In that case there was no evidence that Polly Conway knew that the appellant intended to kill the child until he got the tub of water and put the child in it. There was no evidence that she aided or abetted the crime or encouraged it. She was merely a neighbor who had come to assist a woman while she was giving birth to a child without the aid of a doctor. She admitted that she made

no objection when the appellant placed the baby in the tub of water and that she did not notify the police. It was said in that case in holding that she was not an accomplice: "To be an accomplice a person must participate in the commission of a crime knowingly, voluntarily, and with common criminal intent with the principal offender, or must in some way advocate or encourage the commission of the crime. *Anello v. State,* 201 Md. 164, 168, 93 A. 2d 71; *Butt v. State,* 81 Ark. 173, 98 S. W. 723, 727; *Miller v. Commonwealth,* 240 Ky. 355, 42 S. W. 2d 523; *Hicks v. State,* 126 Tenn. 359, 149 S. W. 1055; *State v. Cartright,* 188 Iowa 579, 174 N. W. 586."

In the instant case Loretta Cox said she knew nothing about the intent of the boys to take the television sets and did not know that the store had been broken into until after she heard the crash and went back later to the premises. She was not charged with the crime but with being a juvenile delinquent under Code, 1951, Article 26, Section 51. Any inference that she might have been the lookout could be negatived by the fact that Robert Dellavox stayed in the truck with her while the breaking took place.

This case was tried by the trial judge without a jury. This Court should not reverse a judgment of conviction in a non-jury case unless it finds that the trial court's conclusion was clearly erroneous. *General Rules of Practice and Procedure,* Part 4, Rule 7(c) ; *Edwards v. State,* 198 Md. 132, 81 A. 2d 631, 83 A. 2d 578, 26 A. L. R. 2d 874; *Kaufman v. State,* 199 Md. 35, 85 A. 2d 446; *Anello v. State, supra; Willis v. State,* 205 Md. 118, 106 A. 2d 85. If the record shows any evidence or proper inferences from the evidence upon which the trial court could find the defendant guilty, this Court cannot find that the decision was clearly erroneous. *Floyd v. State,* 205 Md. 573, 582, 109 A. 2d 729; *Seward v. State, supra.* We cannot say in this case that the trial judge was clearly wrong in finding that Loretta Cox was not an accomplice to the crime for which the appellant was convicted.

This case was argued in this Court on February 8, 1956. On February 16, 1956, the attorney for the appellant forwarded to us an affidavit purportedly made by Loretta Cox that same day, which might indicate that she had knowledge of the intent to commit the crime and that she was guilty of perjury in her testimony before the trial judge in the instant case. He asks that this Court pass an order staying its decision and remanding the case to the trial court in order that he could file a motion for a new trial on the basis of newly discovered evidence.

In *Madison v. State*, 200 Md. 1, 87 A. 2d 593, Madison was found guilty of murder in the first degree by a jury on June 7, 1951, and on October 24th he was sentenced to be hanged. On April 4, 1952, this Court affirmed the judgment. After a date for his execution had been set, an affidavit was secured on February 15, 1954, from one of the material witnesses which might have indicated that she committed perjury at the trial. On February 16, 1954, the appellant filed a motion in the trial court to strike out the judgment and sentence and for a new trial. On March 9, 1954, the Court with one judge dissenting, denied the motion to strike out the judgment and an appeal was again taken to this Court. We there held in *Madison v. State*, 205 Md. 425, 109 A. 2d 96, that a common law court had no power to strike out or modify a judgment after the expiration of the term in which it was rendered except on the grounds of fraud, surprise or mistake. The obvious purpose of this rule was to secure stability for the judgments of the courts. We also pointed out that, although a writ of *coram nobis* was not filed, it would not lie to determine whether any witnesses testified falsely at the trial or to present newly discovered evidence. It was there said: "The purpose of the writ is to bring before the court facts which were not brought into issue at the trial of the case, and which were material to the validity and regularity of the proceedings, and which, if known by the court, would have prevented the judgment. It is manifest that if the writ were available to allow the court in which the judgment was entered to decide subsequently whether

the witnesses who testified at the trial had testified false-ly, and, if it should decide that they had, to strike out the judgment, then the judgment might be the beginning, rather than the end, of litigation. *Keane v. State,* 164 Md. 685, 689, 166 A. 410; *Bernard v. State,* 193 Md. 1, 65 A. 2d 297." It was also said in that case: "When a convicted defendant moves to set aside his conviction on the ground that it was procured by the use of perjured testimony, the burden is on him to show not only that material perjured testimony was used to convict him, but also that it was knowingly and intentionally used by the prosecuting authorities. *Reeder v. Warden of Maryland Penitentiary,* 196 Md. 683, 77 A. 2d 1; *Story v. Burford,* 10 Cir., 178 F. 2d 911, *certiorari* denied, 338 U. S. 951, 70 S. Ct. 482, 94 L. Ed. 587; *Hinley v. Burford,* 10 Cir., 183 F. 2d 581; *Wild v. State of Oklahoma,* 10 Cir., 187 F. 2d 409; *United States v. Spadafora,* 7 Cir., 200 F. 2d 140." We held in the *Madison* case, *supra,* that we had no power to review the motion. We find no authority which would enable us to grant the petition of the appellant, were we disposed to do so.

Without finding that, if the matters set forth in Loretta Cox's affidavit are true, she was an accomplice in this case, we might point out that Rule 10 (c) of the *Criminal Rules of Practice and Procedure* provides: "In all other criminal cases the court may reduce a sentence within ninety (90) days after the sentence is imposed, or within ninety (90) days after receipt by the court of a mandate issued upon affirmance of the judgment or dismissal of appeal." The judgment will be affirmed.

*Judgment affirmed, with costs.*