## GREGOIRE *v.* STATE

(Two Appeals in One Record)

[No. 52, October Term, 1956.]

*Decided January 8, 1957.*

The cause was argued before BRUNE, C. J., and COLLINS, HENDERSON, HAMMOND and PRESCOTT, JJ.

*Emmett H. Nanna, Jr.,* with whom was *Donald R. Brenner* on the brief, for the appellant.

*Alexander Harvey, II, Assistant Attorney General,* with whom were *C. Ferdinand Sybert, Attorney General, Blair H. Smith, State's Attorney for Prince George's County,* and *John W. Mitchell, Assistant State's Attorney,* on the brief, for the appellee.

COLLINS, J., delivered the opinion of the Court.

This is an appeal by George Norman Gregoire, appellant, from two appeals in one record from two separate convictions on criminal charges, by the trial judge sitting without a jury. The two cases were tried separately, one following the other.

The indictment in one case charges the appellant on December 10, 1955, with unlawfully committing a certain unnatural and perverted sexual practice with a boy whose first name is Victor. In the other case the appellant was charged on December 18, 1955, with the same offense with a boy whose first name is David.

David testified at the trial of the case on May 3, 1956, in which he was the prosecuting witness in the first case tried, that he was fourteen years of age and in the ninth grade at school. He identified the appellant in court and stated that a week before Christmas, 1955, he was walking on 65th Avenue about 1:30 P. M., and saw the appellant turn his automobile around and come up 65th Avenue. He stopped and asked David whether he knew the location of a certain street. He then asked him whether he would ride there with him and show him where it was. As David had nothing to do, he got in the car with the appellant. Appellant turned on Central Avenue and went the wrong way. He told appellant that he was going the wrong way but appellant turned to go to Addison Road, then to Ritchie Road, and onto Walker Mill Road. As appellant went down the road he told David he had had a fight with his girl and she was supposed to do something to him. Appellant then drove into a side road in a wooded area just a little way off Walker Mill Road and "unzippered" David's pants and committed an act of oral perversion. He was too scared to run away. The appellant did not abuse him or hurt him in any way. He made no objection to anything that appellant did, although he knew it was wrong. He said he was afraid of the appellant because he did not know what he was going to do. He was just "scared stiff". Appellant did not tell David his name and the next time David saw him was in the police station. After the act was committed both David and the appellant "had to go to the bathroom". Both got out of the car but David said he was too scared to run. Appellant took him back to Central Avenue and let him out of the car. David then walked behind the car and got the license number, 1955 Maryland registration JF-4242, and remembered that it was a blue and white two door Mercury. He then went home, called the police station and, with the registration number, asked about the owner of the car. He said he was still too scared to tell his mother so he went to the movies. After he got home he told his mother about it and she called the police. He and his father went to the police station that night and he identified the appellant there. When asked whether he could have gotten away at the time, he answered that he "might have been able to".

Officer George Whitlow, of the Prince George's County Police Force, said he first met David at about 7:40 P. M. on December 18, 1955, at the boy's residence. He first saw the appellant on the morning of the 19th, shortly after midnight in the appellant's residence. His automobile was a 1955 Mercury, two door hard top, blue and white in color, with 1955 Maryland registration JF-4242. He was at the police station when David identified the appellant. He said David had described to him a 1955 Mercury two door automobile, blue and white in color and "gave me a tag number of a 1955 Maryland registration, JF-4242."

In the other case, Victor testified that he was thirteen years of age and would be fourteen on July 25, 1956, and was in the seventh grade at school. He pointed out the appellant in the court room. He saw him first on December 10, 1955, on 57th Avenue, Hillside, about 6 or 7 P. M., when it was just turning dark. He had been hitchhiking and had started walking. The appellant passed him and stopped and told him that he had seen him hitchhiking and asked whether he wanted a ride. Victor answered: "Yes". Appellant was driving a blue and white 1955 Mercury with two doors and two seats. Appellant asked him where he was going and he told appellant he was going to Capitol Heights to see a boy named Gribble. Appellant told him Gribble had gone to a party and he knew where the party was. They drove up Addison Road and appellant started talking about "some guys overseas and was playing with my leg". Appellant turned down Walker Mill Road "and started playing" with him. As they went on they passed a house and appellant said the party was not there. He then went in a private driveway in Prince George's County and committed an act of oral perversion. Appellant then drove the car to M and 57th Streets where Victor told him to let him out, and he then went home. When asked what he was doing when all this was going on, Victor said he was scared and did not do anything. He was afraid because he did not know whether appellant had a knife, or whether he was going to kill him, or what he was going to do, he was just scared. He did not say anything to appellant because he was scared. He had never been involved in any-

thing like that before. About two weeks later his cousin, Butchie, told him the same thing had happened to David and also told him that David was going to court. He told David about it on the way from school and David said he would tell his mother to tell Victor's mother. He then went home and about 6:30 that evening David's mother called his mother and came to his house and explained to his mother what had happened. They then went to the police station and signed a statement. This resulted in the court action. The police brought him five photographs of men, and he identified one of the photographs to be that of the appellant. On cross-examination he stated that he made no effort to get away from the appellant and appellant was not abusive to him. He was not forced. He had previously testified that he was afraid of the appellant. He did not try to get out of the car because he did not have a chance to do so. The reason he waited two weeks was because he was ashamed. During his cross-examination he said the appellant picked him up about 10:30 P. M. on December 10, 1955, instead of 6 P. M. as he previously testified. He recalled that his father had earlier that evening brought him home from bowling.

Detective Sergeant Nally, of the Prince George's County Police Force, said he first saw Victor on January 12, 1956. He showed him five photographs and Victor identified the appellant in one of them. Victor told the officer that the reason he had not told his mother was because he was afraid.

At the close of the State's evidence in each case the appellant filed a motion for a directed verdict of not guilty on the ground that the evidence was legally insufficient to justify his conviction. The appellant presented no evidence. These motions were denied and the appellant was found guilty in each case. From the verdicts and sentences appellant appeals. Appellant claimed below and here that the motions should have been granted because both David and Victor were accomplices and that he should not be convicted on their uncorroborated testimony.

Code, 1951, Article 27, Section 627, provides in part: "Every person who shall be convicted of taking into his or her mouth the sexual organ of any other person or animal, or

who shall be convicted of placing his or her sexual organ in the mouth of any other person or animal, or who shall be convicted of committing any other unnatural or perverted sexual practice with any other person or animal, shall be fined not more than One Thousand Dollars ($1,000.00), or be imprisoned in jail or in the House of Correction or in the Penitentiary for a period not exceeding ten years, or shall be both fined and imprisoned within the limits above prescribed in the discretion of the Court."

In *Anello v. State,* 201 Md. 164, 168, 93 A. 2d 71, where the appellant was convicted of larceny of use of property which was a misdemeanor, it was said: "It is clear that no one, whether principal perpetrator or aider or abettor, can violate this statute unless he possesses criminal intent. The legal definition of the word 'aider' is not different from its meaning in common parlance. It means one who assists, supports or supplements the efforts of another. The word 'abettor' means in law one who instigates, advises or encourages the commission of a crime. Thus the word 'abet' may import that one is present at the commission of a crime without giving active assistance. *Creasy v. Commonwealth,* 166 Va. 721, 186 S. E. 63; *State v. Epps,* 213 N. C. 709, 197 S. E. 580; *State ex rel. Martin v. Tally,* 102 Ala. 25, 15 So. 722, 737; *State v. Western Union Telegraph Co.,* 13 N. J. Super. 172, 80 A. 2d 342, 355. * * * To be an aider or abettor it is not essential that there be a prearranged concert of action, although, in the absence of such action, it is essential that one should in some way advocate or encourage the commission of the crime. *McKinney v. Commonwealth,* 284 Ky. 16, 143 S. W. 2d 745." It was said in *Seward v. State,* 208 Md. 341, 347, 118 A. 2d 505: "In *State v. Dammann,* 228 Wis. 147, 280 N. W. 698, the Supreme Court of Wisconsin held that the word 'encourage' had no technical meaning. The cases of *United States v. Strong,* 263 F. 789, and *United States v. Ault,* 263 F. 800, adopted Webster's definition of 'encourage' to mean 'giving courage to; inspiring with courage, spirit, or hope.' " See also *Coleman v. State,* 209 Md. 379, 385, 121 A. 2d 254, 257. In cases of persons charged with crimes similar to the one here, the question of whether the prosecut-

ing witness consented is usually characterized as an issue of fact to be decided by the trier of the facts. In *People v. Westek,* 31 Cal. 2d 469, 190 P. 2d 9, 12, the defendant was charged with committing sodomy and for lewd and lascivious conduct upon the prosecuting witnesses, all of whom were under fourteen years of age, and who testified that at the time of the commission of the acts they knew them to be wrongful but each maintained that "he was afraid" of the defendant and did not "willingly participate in the criminal acts". The Court there held that the boys, by virtue of the evidence accepted by the jury as true, were not accomplices, and corroboration of their testimony was not necessary. The Court there quoted the following from *People v. Dong Pok Yip,* 164 Cal. 143, 147, 127 P. 1031, 1032: " 'It may be admitted that the evidence shows that the boy was ignorantly indifferent and passive in the hands of the defendant, even to the point of submission; but there is a decided difference in law between mere submission and actual consent. Consent, in law, means a voluntary agreement by a person in the possession and exercise of sufficient mentality to make an intelligent choice, to do something proposed by another. "Consent" differs very materially from "assent". The former implies some positive action and always involves submission. The latter means mere passivity or submission, which does not include consent. (Citing authorities.) In cases of the character under discussion, the age and mentality of the subject of an indecent assault is important, and should always be considered in determining the presence or absence of consent.' " In *State v. Wilson,* 361 Mo. 78, 233 S. W. 2d 686, the defendant was accused of a crime against nature. The prosecuting witness, eleven years of age, made no outcry and did not report the occurrence until three months later. He testified that the defendant held him while the act was committed, although he tried to get away. The Court held that there was sufficient evidence from which the jury could find that the prosecuting witness did not consent, and was not an accomplice. In *People v. Knorr,* 281 App. Div. 772, 118 N. Y. S. 2d 429, the defendant was convicted on the uncorroborated testimony of a nine year old child, who was a willing participant in the

crime of sodomy and carnal abuse. It was held that it was for the jury to determine on the evidence whether or not the complainant was a willing participant in the act complained of. It was further held that the fact that the nine-year-old child, because of his age, could only be convicted of juvenile delinquency would not preclude a finding that he was an accomplice. In *Medis v. State,* 27 Tex. App. 194, 11 S. W. 112, the defendants were convicted of a crime against nature on the testimony of one prosecuting witness. The Court held that the question of whether the witness consented should have been left to the jury and, if it found that he consented, then there must be corroboration of his testimony. See also *Pipkin v. State,* 154 Tex. Crim. 640, 230 S. W. 2d 221; *State v. Ewing,* 174 Ore. 487, 149 P. 2d 765; *People v. Petrucci,* 271 App. Div. 936, 67 N. Y. S. 2d 611.

Appellant contends that, because David said that appellant was not abusive to him; that he had not abused or threatened him at any time; that he made no objection to anything the appellant did at any time; that he knew he was doing wrong and might have been able to get away; that he did not tell his mother until he came home from the movies; and his only excuse being that he "was too scared to run", indicated that David was a willing participant. He further contends that as Victor said that appellant had done nothing to frighten him; was not mean or abusive toward him; that he knew what had been done was not right; and did not tell anyone about it until two weeks later, his only excuse being that he was "scared and ashamed", Victor was also an accomplice.

It is a firmly established general rule in this State that a person accused of crime may not be convicted on the uncorroborated testimony of an accomplice. *Coleman v. State, supra,* and cases there cited. Compare *Basoff v. State,* 208 Md. 643, 119 A. 2d 917. The reason for this rule is that the accomplice is a person contaminated with guilt and, therefore, his testimony should be regarded with great suspicion and caution. Otherwise the life or liberty of an innocent person might be taken away by a witness who makes the accusation either to gratify his malice, or to shield himself from punishment, or in the hope of receiving clemency by turning State's

evidence. *Watson v. State,* 208 Md. 210, 217, 117 A. 2d 549, and cases there cited.

Of course, in this case there is no reason to believe that the prosecuting witnesses made the accusations to gratify malice, or to shield themselves from punishment, as neither of them knew the appellant before and, if they had not reported the incidents, no one, other than they and the appellant, would have known of the commission of these criminal acts. There is no evidence that either of the prosecuting witnesses voluntarily engaged in the criminal acts. There is no doubt that appellant enticed both of them into his automobile. He deceived David by offering to give him a ride. He deceived Victor by the story of the party which Gribble was attending.

It is provided by Rule 7 of the Criminal Rules of Practice and Procedure of this Court that "When a criminal charge has been so tried by the court, an appeal may be taken as provided by law. Upon appeal the Court of Appeals may review upon both the law and the evidence to determine whether in law the evidence is sufficient to sustain the conviction, but the verdict of the trial court shall not be set aside on the evidence, unless clearly erroneous, and due regard shall be given to the opportunity of the trial court to judge of the credibility of the witnesses." The trial judge could well have believed that these young boys, in an uninhabited area with a strange man, were too frightened to make any resistance; that they thought, if they did so, they might suffer grievous bodily harm; and, also, that on account of disparity in ages, the boy in each case was at a hopeless disadvantage. Each was victimized by the older man and could not be treated as an accomplice.

We cannot say in this case that the trial judge, who saw and heard these prosecuting witnesses, was clearly wrong in finding that they did not knowingly, voluntarily, and with common intent unite with the appellant, an older man, in the commission of the crime, or unlawfully co-operated, aided, or abetted in the commission of the crime, and could not have been convicted of the offense, and therefore were not accomplices. Some jurisdictions, which are definitely in the minority, hold that no corroboration of the testimony of an

accomplice is required in sexual crimes of this character. See *Varga v. State*, 201 Wis. 579, 230 N. W. 629; *State v. Panther*, 230 Iowa 1115, 300 N. W. 291; *Kelly v. People*, 192 Ill. 119, 61 N. E. 425. It is not necessary that we pass upon that question here. The judgments will be affirmed.

*Judgments affirmed, with costs.*