## NOVAK v. STATE

[No. 34, September Term, 1957.]

474

*Decided November 14, 1957.*

The cause was submitted on briefs to BRUNE, C. J., and COLLINS, HENDERSON, HAMMOND and PRESCOTT, JJ.

*James H. Pugh* and *James S. McAuliffe, Jr.,* on the brief for appellant.

*C. Ferdinand Sybert, Attorney General, Clayton A. Dietrich, Assistant Attorney General,* and *Alger Y. Barbee, State's Attorney for Montgomery County,* on the brief for appellee.

HAMMOND, J., delivered the opinion of the Court.

The appellant was found guilty in the Circuit Court for Montgomery County, by the court sitting without a jury, of violating Code, 1951, Art. 27, Sec. 306, on testimony showing him to have been the runner or pick-up man for a bookmaking establishment.

He argues (1) that the evidence was legally insufficient to sustain the conviction under Sec. 306 of Art. 27, since, at the worst, it showed him to have forwarded or to have agreed to forward money to pay bets already lost, and the statute proscribes only the forwarding of, or the agreeing to forward, money to be bet; (2) that at most it was proved that

he had done what would have made him an accessory if the crime were a felony, whereas the warrant charged him alone as a principal; and (3) that there was no legally sufficient corroboration of the testimony against him of his accomplices —the bettors—as to his connection with the offense charged.

The warrant charged appellant with violating Code, 1951, Art. 27, Sec. 306, on September 18, 1956, in that he did bet, wager and gamble and did make and sell a book and pool on the result of a race of running horses; and did become the depository of and did agree to send and did forward money to be bet and gambled upon the result of a horse race. The bill of particulars repeated the allegations of the warrant in substantially identical language.

The evidence permitted a finding that for some months prior to September 18, 1956, and until the day after, Jack Groves and Raymond German operated in Prince George's County a bookmaking and numbers establishment, which was raided on September 19, 1956, when the two men were arrested. It was shown further that one of the telephones in the establishment had the number Hemlock 4-8847; that this establishment, as is often the case, obtained its business from bettors who telephoned in their bets which the bookmakers accepted and recorded; that the bookmakers employed runners who went around to the various bettors and collected the money that they had bet and paid off wins; and that the runners themselves also picked up bets and brought them to headquarters.

One Garner, a barber at the Arcade Barber Shop in Montgomery County, said that the appellant told him to telephone Hemlock 4-8847 if he wished to make a bet on the horses; that over at least a six month period before September 12, 1956, he had called in bets a number of times and talked to "Jack"; that the appellant, whom he had known for three years, later collected the money he had bet; that he had won only once; and that on September 12, 1956, in the barber shop the appellant paid him in one dollar bills the eight dollars he had won. There was corroboration of this testimony by Montgomery County police officers.

The owner of the Arcade Barber Shop, characterized by

the trial judge as "obviously reluctant to testify", said appellant had given him the Hemlock 4-8847 number to call for the placing of bets; that he had from time to time called the number, talked to Jack, whom he knew, and made bets, the money for which appellant had later collected; and that when he won, the appellant had brought him his winnings; that on September 18, 1956, at the People's Drug Store near the barber shop, he gave appellant thirty dollars representing money he had previously bet and lost. A policeman testified that on September 18, 1956, he saw an exchange of money between appellant and the man who appeared to be the manager of the Arcade Barber Shop.

The police had the appellant under surveillance for almost a month. They testified that every morning he travelled a regular route, making stops at drug stores, barber shops, liquor stores, valet shops and taxi stands; that this was an established routine for a runner of a bookmaking establishment; that he stopped at the home of Jack Groves every morning; that just before noon, the customary time, he would arrive at the bookmaking headquarters and let himself in with his own key; that Jack Groves and Raymond German also would let themselves in the bookmaking headquarters in the forenoon by the use of their own keys.

The real thrust of appellant's argument is that on September 18, 1956, the day named in the warrant and in the bill of particulars, he was shown only to have received money in payment of bets previously made, and that the statute forbids and punishes only the receiving and forwarding of money to be bet. He says that if the State proved what it says occurred on September 18, it showed him to be no more than the equivalent of an accessory after the fact, and as such he cannot be charged and convicted as a principal, even though the crime is a misdemeanor. The argument overlooks the important fact that the warrant and the bill of particulars charged the appellant, in the words of the statute, with gambling and bookmaking, as well as the forwarding of gambling money. The State did not restrict itself to that part of the statute relating to the receiving and forwarding of gambling money. The contention the appellant makes here was made

in *Meade v. State,* 198 Md. 489, 493-494. In discussing the contention, the Court said that the evidence indicated that the appellants were conducting a place where they were receiving bets by telephone and making notations of these bets. The Court said: "Bets taken over the telephone cannot be considered as completed transactions. At some time or some place, money must be put up to take care of these bets, and, if they are successful, money must be paid out to the winners. * * * the appellants had become the depository of bets which were not completed transactions, but were transactions yet to be completed * * *. That is sufficient evidence, we think, to justify the submission of the case to the court, and we cannot find its decision that the appellants were guilty, clearly erroneous." The act of gambling or making book on horse races is not complete when the bettors are given the telephone number of the gambling establishment, nor when the bettors call that number and place a bet or when the horse race on which the bet was made is over. The gambling and the making of book are not complete until the consideration for the bet passes from the bettor to the runner of the bookmaking establishment. We think the evidence was sufficient to sustain the conviction of appellant as a participant in gambling and bookmaking on horse races. *Colie v. State,* 193 Md. 608; *Wilson v. State,* 200 Md. 187, 193; *Alexander v. State,* 198 Md. 395.

We assume without deciding that the barber and the owner of the barber shop were accomplices of the appellant and that their testimony must have been corroborated to have justified the trial court in reaching the verdict of guilty. We think there was sufficient corroboration. It is true that there was some conflict in the testimony as to what occurred on September 18, in that the barber shop owner testified that the money was paid to appellant in the drug store, whereas the police officer testified that he saw the exchange of money in the barber shop. In proving the offenses charged, the State was not restricted to September 18 and was entitled to show acts performed during the statutory period of limitations preceding the indictment. *Mazer v. State,* 212 Md. 60; *Berry v. State,* 202 Md. 62, 68. In *Wilson v. State,* 200

Md. 187, 193-194, the warrant charged bookmaking only on October 19, and evidence was admitted of bookmaking on October 12. The Court said: "Evidence is not restricted to the exact date named in an indictment—or warrant—but may show the offense charged at any time within one year prior to the date named. * * * The testimony as to bookmaking on October 12, 1951 was therefore admissible in evidence. It was also legally sufficient to convict and therefore to require denial of defendant's motion for a directed verdict." We think that what was there said is applicable here. The testimony as to what occurred on September 12 came in without objection. As the trial court observed, we think accurately, the testimony of Garner as to what occurred on September 12 "* * * is fully corroborated in almost every particular by the police officers * * *." There was further corroboration of the connection of the appellant to the bookmaking operations by his furnishing of the telephone number of the establishment and by his entry to it each day by means of a key carried by him, as well as by his stops each morning at the home of Jack Groves, one of the owners and operators of the place. In *Berry v. State, supra,* it was said that the frequent presence of the accused in that case in the gambling headquarters, coupled with his possession of a key affording him access to it, permitted a rational inference of his connection with it. See also *Basoff v. State,* 208 Md. 643, 649. Corroboration need not extend to every detail. *Brown v. State,* 210 Md. 301, 305.

If we assume that appellant's contention that Groves and German were the principals in the bookmaking crime and that he was merely aiding and abetting them, we think that what he did made him a principal in the statutory misdemeanor. In a misdemeanor all accessories are principals and may be charged and tried alone, as such. *Coleman v. State,* 209 Md. 379, 384; *Seward v. State,* 208 Md. 341, 346; *Watson v. State,* 208 Md. 210, 217; *Anello v. State,* 201 Md. 164, 168; *Roddy v. Finnegan,* 43 Md. 490, 503-504; *United States v. Gooding,* 25 U. S. (12 Wheat.) 460, 6 L. Ed. 693 (appeal from Circuit Court of Maryland). In *Colie v. State, supra,* where the conviction of a runner for a bookmaking establish-

ment was upheld, the warrant and the bill of particulars were legally indistinguishable from those in the case before us, and much of the testimony was similar to that here.

In the record we find no errors of law, and nothing to sustain the appellant's contention that the trial judge was clearly wrong on the facts.

*Judgment affirmed, with costs.*