## WRIGHT *v.* STATE

[No. 210, September Term, 1958.]

644

The cause was argued before BRUNE, C. J., and HENDER-
SON, HAMMOND, PRESCOTT and HORNEY, JJ.

*Walter C. Anderson,* with whom were *Webb & Travers* on
the brief, for appellant.

*Shirley Brannock Jones, Assistant Attorney General,* with
whom were *C. Ferdinand Sybert, Attorney General,* and
*Hamilton P. Fox, Jr., State's Attorney for Wicomico County,*
on the brief, for appellee.

HORNEY, J., delivered the opinion of the Court.

This is an appeal by David Wright (the defendant) from
the judgment entered against him by the Circuit Court for
Wicomico County following his conviction by a jury of arson
under Code (1957), Art. 27, § 7.

The trial court overruled the defendant's motion for a di-
rected verdict at the conclusion of the evidence offered by
the State and again at the close of all the evidence. The sole
question presented is whether there was sufficient corrobora-
tion of the testimony of the two accomplices that the defend-
ant had participated in or was identified with the offense
charged.

A skating rink near Salisbury—known as Broyles Skate-
land—was destroyed by a fire of incendiary origin about one
hour after midnight on August 13, 1958. The fire was first
noticed between 12:35 and 12:45 a. m., but the two brothers
who discovered it delayed calling the fire department until
about 12:55 a. m., while they checked the building closer to
see what was causing the "glittering of lights." So far as
the fire marshal could ascertain the fire had not been set be-
fore 12:35 a. m. Those who were the first to arrive at the

scene noticed through the plate glass window that the fire had started on the inside near a counter in the front of the building. There was evidence that the building had been entered through a side door leading into the storage room. Shortly after the fire alarm had sounded, firemen discovered the opened door in which a glass had been broken. After the debris had cooled sufficiently to permit investigation, it was learned that a cigarette machine had evidently been tampered with before the fire since the door of the machine had been removed and the hinge pin was found nearby.

In the evening of the night of the fire the defendant called at the Curtis home and took the daughters of Lottie Wright and a grandson as well as her son, James Curtis, and two of his friends, Clarence Shofner and Robert Henry, to a drive-in movie near Delmar. They returned between midnight and 12:30 a. m. Lottie Wright had gone to bed, and the daughters and grandson also retired promptly. The defendant and James, Clarence and Robert did not retire but remained either in the living room or the kitchen where the defendant and Robert ate watermelon. Afterwards Robert left to go home and arrived there at 12:45 a. m.

Clarence—a sixteen year old boy—was one of the accomplices and testified that he had known the defendant for about a month. He had been in the habit of riding around with the defendant every night and had gone to the movies with him on the night in question. After Robert had gone home, and he and James had driven to the skating rink with the defendant, the defendant and James removed a "big" oil can from the trunk and took it with them toward the building. He (Clarence) stayed in the automobile to "watch out to see if anybody was to come," and, if they did, he was supposed to blow the horn. When they came back the oil can was put in the back seat and they returned to Salisbury.

James—another sixteen year old boy—was the other accomplice. He had known the defendant for about two months, and had been out late at night with the defendant on other occasions, sometimes as late as 1:00 or 1:30 in the morning. He too had been to the drive-in movie with the defendant. Before they (the defendant, the witness and Clarence) had

left the Curtis house they had decided "to get some money" and drove out to the skating rink. When the automobile was parked, the can of kerosene, which came from the Curtis house, and a tire iron were taken from the trunk and carried inside the building. The tire iron was used to break a glass in order to open the side door. James was told by the defendant to get paper and spread it on the floor near the counter and across the inside of the front of the rink, and pour oil on it. The defendant, before lighting the oil-soaked paper, broke into the cigarette machine by taking "a piece out of the hinge." The oil can and tire iron were brought back and placed in the back seat. When they arrived home the can was removed from the automobile and thrown into the backyard.

The defendant—a thirty-six year old man—testified that he had taken Lottie Wright (who was apparently no relation to him) and her two daughters and grandson to the movies, but denied that Clarence, James and Robert had gone with them. When they returned between midnight and 12:30 he ate watermelon alone and then went out to his automobile parked in the driveway and went to sleep. It was not unusual for him to visit at the Curtis home and he often slept in his automobile in the driveway. When asked to explain the story told by Clarence and James he stated they knew he was wanted in Virginia on another charge and decided that they would "put everything" on him since he "would be gone and wouldn't be back." The defendant also admitted that he drove around every evening with Clarence and James until the early hours of morning.

There was also other non-accomplice testimony to show that an oil can was found in the backyard of the Curtis house, and that a tire iron was found in the back seat of the defendant's automobile.

The State acknowledges that the corroborative evidence in this case is not as strong as might be desired, but insists that it was legally sufficient to warrant submission of the case to the jury. We have said many times, as we said in *Judy v. State,* 218 Md. 168, 176, 146 A. 2d 29 (1958), that "[i]t is not necessary for corroborating testimony to be sufficient in

itself to convict" and that "it need only support some of the material points of the accomplice's testimony." This is not, of course, the first time we have been required to decide— on a motion for a directed verdict pursuant to Maryland Rule 738—whether the evidence of an accomplice has been sufficiently corroborated to sustain the conviction of the accused, but it is a case in which it appears we should take a closer look at the rule of law which has been recognized and applied in this State for many years and, particularly, what is meant by that part of the rule which states in effect that the corroborative evidence should support the accomplice *in at least some of the material points involved* tending to show the guilt of the accused.

Many courts have refused to follow the rule requiring corroboration of the testimony of an accomplice. See, for instance, *State v. Carey,* 76 Conn. 342, 56 A. 632 (1904), for a comprehensive discussion of the reasons why the Supreme Court of Errors decided not to adopt the rule. See also 1 Underhill *Criminal Evidence,* § 182 (5th ed. 1956) ; 2 Wharton *Criminal Evidence,* § 447 (12th ed. 1955). In other jurisdictions corroboration is required by statute. In Maryland, as in at least one other state, the same result has been reached by the courts. A brief historical background as well as the reasoning behind the development of the rule in this State are set forth in *Luery v. State,* 116 Md. 284, 81 A. 681, 685 (1911), and need not be repeated here.

The rule as it is applied today is substantially the same as when it was formulated by the decision in the *Luery* case, *supra.* Of course, when that case was decided, this Court had neither a duty nor a right to review the legal sufficiency of the evidence in criminal cases, and a trial court could not take a criminal case away from the jury because of insufficient corroboration. Nevertheless, this Court went on to say (at pp. 293, 294) that the trial courts could act by "adopt[ing] the practice of granting prayers *advising or cautioning* juries against conviction without corroboration" and by not permitting "a conviction to stand if based *exclusively* on such testimony" upon a motion for a new trial seasonably made, and added at p. 294 : "[Courts should not] require too much

in the way of corroboration, * * * it is not required * * * [that there be] sufficient evidence to convict, exclusive of the accomplice's testimony, * * * [T]he important matter is to have [the accomplice] supported in at least some of the *material points* involved, tending to show the guilt of the accused." (Emphasis added in part).

In all of the cases which followed the *Luery* case, *supra,* during the period from 1911 to 1950, the rule was restated and the judgments were either affirmed or the appeals dismissed because the sufficiency of corroboration was reviewable only on a motion for a new trial in the lower court and not on appeal.

Since the effective date of the amendment [1] to § 5 of Article XV of the Constitution of Maryland and the adoption of Rule 738, *supra,* this Court has had both a right and a duty—if and when a question is properly raised—to review the legal sufficiency of the evidence in a criminal case. This power to review the sufficiency of corroborative evidence has never been questioned, and has been raised in a number of cases since December 1, 1950, on a motion for a directed verdict. In all of the cases in which the witness was held or assumed to be *particeps criminis* with the accused,[2] the rule was referred to or stated and the judgments, with one exception,[3] were affirmed because the corroborative evidence consisted of the behavior and conduct of the accused, or his presence at the scene of the crime under suspicious circumstances, or the ample and sufficient testimony of non-accomplice witnesses in support of *some of the material points* of the accomplice's testimony. In the remaining cases decided since the constitutional amendment the witnesses were held not to be accomplices for one reason or another.[4]

---

1. Ratified November 7, 1950; effective December 1, 1950.

2. *Ferraro v. State,* 200 Md. 274, 89 A. 2d 628 (1952), *Brown v. State,* 210 Md. 301, 123 A. 2d 324 (1956), *Novak v. State,* 214 Md. 472, 136 A. 2d 256 (1957) and *Judy v. State,* 218 Md. 168, 146 A. 2d 29 (1958).

3. In *Nolan v. State,* 213 Md. 298, 131 A. 2d 851 (1957), the corroborative evidence was sufficient but the judgment was reversed for other reasons.

4. *Polansky v. State,* 205 Md. 362, 109 A. 2d 52 (1954), [witness

In this case we think it will be salutary to discuss more fully what is meant by the phrase requiring corroboration of "some of the material points involved." By way of dictum in *Wolf v. State,* 143 Md. 489, 122 A. 641 (1923), we said at p. 504: "[T]he corroborative evidence need not be sufficient in itself to convict. The requirement is that it should tend to sustain the charge with respect to 'some of the material points involved' [quoting *Luery v. State, supra*]." But, what is meant by "corroborate" and "some of the material points" [or facts]?

In 1 Underhill, *op. cit., supra,* § 185, the author defines both, thus:

> "'Corroborate' means to strengthen, not necessarily the proof of any particular fact to which an accomplice has testified, but the probative, criminating force of his testimony. 'Material facts' corroborative of accomplice are facts of criminative character or tending to connect accused with commission of offense charged. There can be no conviction unless the corroborative evidence relates to substantial facts * * *. Clearly corroboration of immaterial matters will not suffice. * * * The corroborative evidence may be sufficient, though it does not bear directly upon any particular fact which has been stated in the evidence of the accomplice. But it seems that corroboration which with some degree of cogency tends to establish facts material and relevant which would authorize the jury to credit accomplice's testimony should be sufficient."

Wigmore does not support the requirement of corroboration

---

neither admitted nor was convicted of offense charged], *Watson v. State,* 208 Md. 210, 117 A. 2d 674 (1955), [witness an observer but non-participant], *Basoff v. State,* 208 Md. 643, 119 A. 2d 917 (1956), [witness a victim], *Coleman v. State,* 209 Md. 379, 121 A. 2d 254 (1956), [witness a delinquent bystander], *Gregoire v. State,* 211 Md. 514, 128 A. 2d 243 (1957), [witness a victim], *Lusby v. State,* 217 Md. 191, 141 A. 2d 893 (1958), [witness a victim], and *Saldiveri v. State,* 217 Md. 412, 143 A. 2d 70 (1958), [witness a victim].

[§ 2059 b], but in § 2059 c of his work on *Evidence* (3rd Ed., 1940), after noting that the majority rule requires corroboration as to the identity of the accused, he says: "In a few jurisdictions it is occasionally said that the corroboration must affect some *material fact* in the accomplice's testimony [citing *Wolf v. State, supra*]." The law writer then goes on to say: "Today the place of this phrase is taken by the * * * requirement as to corroborating the accused's participation or identity; and that indeed seems to have been * * * [the original meaning]." So in *Polansky v. State,* 205 Md. 362, 109 A. 2d 52 (1954), we said at p. 367: "The prevailing rule today * * * is that there must be corroboration of the testimony of an accomplice as to the identity of the accused with the perpetrators of the crime or the crime itself."

When the rule is thus restated, it still appears that not much in the way of corroboration is required and that it is not necessary in and of itself for the corroborative evidence to be sufficient to convict, yet the corroborative evidence must support the testimony of the accomplice as to some of the material facts tending to show that the accused was either identified with the perpetrators of the crime or had participated in the commission of the crime itself. Whether the testimony of an accomplice has in fact been sufficiently corroborated must, of course, depend upon the facts and circumstances, and the inferences deducible therefrom, in each case.

In those jurisdictions in which there is a statute or rule of law requiring corroboration of the testimony of an accomplice, the lack of corroboration is in and of itself sufficient to prevent a conviction. What, then, is the state of the record with respect to the nature of the corroborative evidence in this case?

It is not controverted that the fire had been set and the building burned contrary to law. There was corroborative evidence that the accomplices and the defendant had been to the movies together and had returned to the Curtis home between midnight and 12:30. There was corroborative evidence that the defendant had eaten watermelon with one of the accomplices after returning from the movies. There was cor-

roborative evidence that the defendant had been seen with the accomplices in the Curtis home as late as 12:30 or 12:35, or, in other words, a few minutes before the fire started to burn visibly. There was corroborative evidence that the defendant had a habit of driving the accomplices around every evening until the early hours of morning. There was corroborative evidence that the defendant slept in his automobile parked in the Curtis driveway. There was corroborative evidence that a glass in the side door of the skating rink had been broken out and that the cigarette machine had been tampered with. And there was corroborative evidence that the oil can was found in the Curtis backyard where it had been thrown. There was the fact that the defendant made false statements with respect to taking Lottie Wright, Robert Henry and the accomplices with him to the movies and with respect to eating watermelon with some of the accomplices after he returned. And there was the fact that the testimony of the non-accomplice witnesses was consistent with that of the accomplices and inconsistent with that of the defendant. And there was also an inference—deducible from the fact that the defendant had been with the accomplices only a few minutes before the fire had been set—that he had taken them in his automobile to the scene of the crime.

Even though much of the evidence corroborated only the fact that the defendant had engaged in several lawful pastimes —such as going to the movies, eating watermelon and roaming the highways and byways late at night—there was evidence to show that the defendant was identified with the admitted arsonists. *Polansky v. State, supra.*

There was also the fact that the defendant made false statements with respect to his association with the accomplices a few minutes before the fire was set. *Nolan v. State,* 213 Md. 298, 131 A. 2d 851 (1957). See also 22 C. J. S. *Criminal Law,* § 812d (5) where it is said:

> "The fact that at or about the time of the commission of the offense * * * he [the accused] and the accomplice were together, in apparent intimacy, in the neighborhood of the place where the crime was

committed, may sufficiently connect accused with the commission of the crime to furnish the necessary corroboration of the accomplice, especially where accused has subsequently falsely denied his association with the accomplice * * *."

It has also been said that corroboration of a material point tending to connect the accused with the crime is sufficient for a jury to infer that the accomplice had testified truthfully even with respect to matters as to which there had been no corroboration. 22 C. J. S. *Criminal Law,* § 812 b (1) ; Wigmore, *op. cit., supra,* § 2059 b.

And there was the fact that the testimony of the non-accomplice witnesses was consistent with that of the accomplices and inconsistent with that of the defendant. Cf. *Ferraro v. State,* 200 Md. 274, 89 A. 2d 628 (1952).

Finally, there was the logical conclusion—inferable from the facts and circumstances—that the defendant took the accomplices in his automobile to the skating rink. See *Nolan v. State, supra.*

We hold that the corroborative evidence was legally sufficient to warrant submission of the case to the jury. It was for the jury to determine the weight of the evidence and the credibility of the witnesses. Rule 739 c. Therefore, the judgment will be affirmed.

*Judgment affirmed.*