## BROWN *v.* STATE

[No. 191, October Term, 1955.]

302

*Decided June 14, 1956.*

The cause was argued before BRUNE, C. J., and DELA-PLAINE, COLLINS, HENDERSON and HAMMOND, JJ.

*Robert E. Clapp, Jr.,* with whom was *L. Awalt Weller* on the brief, for the appellant.

*Stedman Prescott, Jr., Assistant Attorney General,* with whom were *C. Ferdinand Sybert, Attorney General,* and *Donald C. Sponseller, State's Attorney for Carroll County,* on the brief, for the appellee.

HENDERSON, J., delivered the opinion of the Court.

The appellant was tried in Carroll County before the court without a jury on two indictments charging him in three counts with keeping and maintaining, managing, and having an interest in, a gaming table, to wit, a pinball machine and the profits thereof on October 12, 1955, and October 15, 1955. He was acquitted on the first indictment but convicted on all three counts of the second and sentenced to a fine of $500.00 and imprisonment in the House of Correction for six months. He contends that the verdict was clearly erroneous.

The chief witness for the State was Mrs. Fowble, known as "Hillbilly", who had been employed as a waitress at the City Restaurant in Westminster. She was first employed there in January, 1955, and worked for about six months, when she quit. In August, 1955, she was sent for by the appellant who asked her to come back. She was re-employed by a Mr. Phoebus a few days later and worked there until October 18, when she was discharged. She went immediately to the State's Attorney for Carroll County and informed him about gambling operations on a pinball machine in the restaurant. She took with her certain slips of paper which she claimed to have found on the floor of the restaurant on October 17, 1955, when she came to work. These slips were cash register receipts, stapled together. Her nickname appeared on some of them, and the appellant's name was on others. She identified two of them as pay-offs made by her on October 15 to William D. Stephan, in the amount of $10.00 each. She also identified one slip as a pay-off made by the appellant personally in the amount of $6.00. Mr. Stephan testified in corroboration of her testimony that she had paid him the sums mentioned, some time about the middle of October. He also testified he had received a pay-off from the appellant. All of the testimony as to pay-offs was denied by the appellant.

It was shown that the appellant, in October, 1955, was a stockholder in City Restaurant, Inc., and there was some testimony that before incorporation he owned the restaurant individually. He claimed that he received no benefits from the restaurant in October. He admitted, however, that he was the president of Brown Amusements, Inc., which owned and operated pinball machines and other amusement devices, one of which was located on the premises. It was shown that he had obtained a license for one pinball machine in his individual name, to be located on the premises.

Mrs. Fowble described the pinball machine as one requiring the insertion of a nickel in order to play. It was wired with lights, five each way, and if five lights in a row were lighted by a player, the machine would record 200 free games in a space provided for that purpose. The machine itself was not produced in evidence. She testified: "I played it several times but I never won anything. If they didn't win, it wouldn't pay off. I wasn't lucky enough to win anything." She testified that the player, if he won free games, was given the option of continuing to play, or to receive cash for the free games recorded. The record of the number of free games could be removed by touching a device under the machine, in the event that the player elected to receive the pay-off. She got the cash from the cash register, and she was instructed to record any pay-offs on a slip similar to those offered in evidence. These slips were kept in the cash register and checked every Tuesday night by the appellant or his brother, Walter Brown. She testified that she was instructed by the appellant, and Mrs. Helen Thompson, the manager of the restaurant, to be careful not to pay off anyone she did not know, or when police were in the restaurant. On some occasions she helped the appellant count the money from the machine, some of which was left in the cash register drawer to be used in future pay-offs.

The appellant does not deny that the testimony of Mrs. Fowble, if believed, was sufficient to implicate him, but argues that she was an accomplice, and that the witness Stephan was unable to fix the time of her alleged pay-offs to him, other than the middle of October, and that evidence of prior occasions was disbelieved by the trial court, since the appellant was ac-

quitted on the indictment charging offenses on or before October 12. We think, however, that there was sufficient corroboration. While Stephan could not fix the exact date, he testified he was paid $20.00 by her on only one occasion, which was about the middle of October, and shortly before he went with her to the State's Attorney's office. It is not necessary that corroboration extend to every detail. *Wolf v. State,* 143 Md. 489, 504; *Ferraro v. State,* 200 Md. 274, 282; *Polansky v. State,* 205 Md. 362, 367. It is conceded that Stephan was not an accomplice. See Note, 119 A. L. R. 707.

The appellant contends that there was no proof that he kept or maintained, managed, or had an interest in the pinball machine. But the testimony was that the appellant was the president of the corporation owning the machine, and had a license to operate it in his own name. Under Code P. L. L. (1930 Ed.), Art. 7, sec. 90, as enacted by Acts of 1947, Ch. 479, it was made a misdemeanor to maintain or operate in Carroll County without a license "any pinball machine or similar device operated or played by the insertion of a coin or token issuing checks or tokens which permits free plays or replays, only, or registering scores, free plays, or replays". The appellant had such a license, and Mrs. Fowble testified he checked the receipts from the machine, instructed her in regard to pay-offs, and checked the pay-off slips on one of which his name appeared. The testimony permits the inference, at least, that he managed or had an interest in the machine or its profits.

The appellant finally contends that there was no legally sufficient evidence that the pinball machine was a gaming device, because there was no evidence that it was a game of chance, as distinguished from a game of skill. Code (1951), Art. 27, sec. 303, provides that "No person shall keep any gaming table, or any house * * * or place * * * for the purpose of gambling." Sec. 304 provides that "Every faro table * * * or any other kind of gaming table (billiard table excepted), at which any game of chance shall be played for money or any other thing, shall be deemed a gaming table." Sec. 311, on which the indictment in the instant case was based, provides: "Any person who shall keep any gaming table or other place

of gambling in this State, * * * or who shall in any way manage such gaming table or other place for gambling in this State, or who shall have any interest in any gaming table or the profits thereof, shall be deemed to be guilty of a misdemeanor * * *." Sec. 314 provides: "All games, devices and contrivances at which money or any other thing shall be bet or wagered shall be deemed a gaming table within the meaning of Sections 303, 304, 305, 311 and 312." Sec. 316 provides that "The courts shall construe the preceding sections relating to gambling and betting liberally, so as to prevent the mischiefs intended to be provided against."

In *James v. State,* 63 Md. 242, a conviction under the gaming statutes for keeping a gaming table, or a room for gambling, wherein pools were sold on horse races, was reversed, but the Court was divided as to the grounds. Two judges took the view that a horse race was not a game of chance. Two others took the view that the statutes did not prohibit pool-selling on a future event. Chief Judge Alvey and Judge Miller dissented in separate opinions. Subsequently, sec. 306 was enacted to cover the case specifically. We think the decision is inconclusive on the point now presented. In *Hunter v. State,* 193 Md. 596, where the charge was keeping and maintaining a gaming table, to wit, a pinball machine, and it was shown that there were pay-offs in cash, in lieu of free games won, the conviction was sustained, but the decision turned on the admissibility of evidence of pay-offs prior to the date specified in the indictment. The case of *Gaither v. Cate,* 156 Md. 254, was not a criminal prosecution and dealt with other statutory provisions covering gift enterprises. Nevertheless, the Court pointed out that the statutes against gambling were all to be construed liberally to prevent the mischiefs which the Legislature sought to repress, and that the fact that the machines might be used for amusement was not controlling. In *Hoke v. Lawson,* 175 Md. 246, again not a criminal prosecution, the Court had before it a statute requiring a state-wide license for pinball machines "so constructed or devised as to make the result of the operation depend in whole or in part upon the skill of the player". It was also provided that nothing in the section should "be deemed to make lawful the maintenance,

operation or possession of any machine or device, the successful operation of which depends solely on chance." It was held that the requirement of skill was so vague and indefinite as to render the whole statute invalid.

The statutory terms "gaming table or other place of gambling" in sec. 311 (and sec. 303), are not in terms limited to those where "any game of chance shall be played for money", as set out in sec. 304, for that definition is not exclusive. Moreover, sec. 314 contains the further definition that a "gaming table" shall include any "device(s) * * * at which money * * * shall be bet or wagered". Construing the statutes liberally, we see no reason to confine the application of the statute to those devices that depend upon chance, as distinguished from skill. In its broader aspects, "playing any game for money is gaming". *Ankers v. Bartlett*, 1 K. B. 147 [1936]. In the instant case, if we assume, without deciding, that the playing of the machine in question for free games was impliedly legalized by the local licensing act, there was evidence that there were pay-offs in cash, in varying amounts up to a maximum of $10.00, for a five cent investment. There was also testimony that Mrs. Fowble, in playing the machine, was never "lucky enough to win anything". It may be inferred, despite the paucity of evidence as to how the machine worked, that the inducement to play was, in part at least, the chance of gain. The insertion of the money and the operation of the device by the player in the hope of winning a monetary reward in varying amounts, in our view of the Maryland Statute, constitutes a bet or wager, regardless of the element of skill. Even under statutes requiring proof that the device is a game of chance, it is generally held that where prizes are given for making a designated score, or sinking a ball in a certain hole, or striking a designated pin, the operation is a game of chance. See *State v. Kilburn*, 109 P. 2d 1113 (Mont.), and Note, 135 A. L. R. 104, 149. See also *Baedaro v. Caldwell*, 56 N. W. 2d 706 (Nebr.) ; *Pepple v. Headrick*, 128 P. 2d 757 (Ida.) ; *Steely v. Commonwealth*, 164 S. W. 2d 977 (Ky.) ; and *People v. One Pinball Machine*, 44 N. E. 2d 950 (Ill. App.). These cases also point out the ingenious efforts of manufacturers to circumvent the law, the fact that even the award of free games is generally

held to constitute a thing of value, and that the element of skill, where relevant, is not ordinarily the dominant motive in the average player. Usually there is some chance involved even in a game of skill, and *vice versa*. If a pinball machine is not a gambling device *per se*, it may become one when it is shown that it is in fact put to such use.

We cannot find that the verdict of the trial court was clearly erroneous, under the evidence produced.

*Judgment affirmed, with costs.*