GRAY *v.* STATE

[No. 133, September Term, 1960.]

*Decided February 14, 1961.*

The cause was argued before HENDERSON, HAMMOND, PRESCOTT, HORNEY and MARBURY, JJ.

*Earl E. Manges,* with whom was *Harold E. Naughton* on the brief, for appellant.

*James H. Norris, Jr., Special Assistant Attorney General,* with whom were *C. Ferdinand Sybert, Attorney General,* and *James S. Getty* and *Donald W. Mason, State's Attorney* and

*Assistant State's Attorney,* respectively, *for Allegany County,* on the brief, for appellee.

MARBURY, J., delivered the opinion of the Court.

This is the third and last appeal by Raymond John Anthony Gray from a judgment of the Circuit Court for Allegany County, in which Gray was found guilty of armed robbery by a jury. This was the result of this Court reversing the previous convictions of the appellant and remanding the case for a new trial. *Gray v. State,* 221 Md. 286, 157 A. 2d 261; and *Gray v. State,* 219 Md. 557, 150 A. 2d 221. He was sentenced to be confined in the Maryland Penitentiary for a period of ten years.

The appellee moved to dismiss the appeal as to the appellant's contention that the testimony of an accomplice was not corroborated and that the evidence consequently was insufficient to sustain his conviction. This motion was based upon the claim that the appellant had not printed in his appendix enough of the testimony to present this question properly for decision by this Court. Dismissal is discretionary with this Court and not mandatory, and we think that the same factors are present here as in *Brown v. Fraley,* 222 Md. 480, 482-483, 161 A. 2d 128—that the omission was not due to any deliberate intent to violate or evade the rule and that the omissions have been supplied—and we accordingly deny the motion.

The appellant's first and main contention is that the Court erred in refusing to grant his motion to remove the case to some other court for trial. He had previously been tried upon an information in three counts charging armed robbery, receiving stolen goods, and assault, and convicted by a jury with two others, Mrs. Alma Johnson and Howard Iser, on the first count of the information and found not guilty on the second and third counts. The others did not appeal.

Upon the second remand of the case by this Court, on March 9, 1960, the defendant, upon arraignment, through his Court appointed counsel, entered a plea of guilty to the second count of the information (Receiving Stolen Goods), and

given a ten year sentence to the Maryland Penitentiary. Later on the same day the trial judge, realizing that Gray had pleaded guilty to receiving stolen goods, of which he had already been acquitted by the jury's verdict in the former trial, called counsel into chambers whereupon, the docket entries show, on March 9 the "plea of guilty to second count of the information withdrawn by defendant, dismissal of first and third counts of information by State's Attorney withdrawn and sentence to confinement in the Maryland Penitentiary stricken out."

On April 1, 1960, the docket entries show that counsel, who had represented the appellant in his previous trials and appeals, were again appointed by the Court to represent him and that "second and third counts of information dismissed by State. Prisoner arraigned—Plea Not Guilty on first count of Information. Motion for removal by defendant. Motion of State's Attorney to dismiss petition for removal. Hearing on Motion for removal—Motion refused—in open Court."

The transcript, immediately following the Court's ruling contains the following:

"The Court: Do you want the jury examined on their voir dire?

Mr. Naughton: Yes, sir.

The Court: Do you have any inquiries that you want the Court to propound to the jury?

Mr. Manges: Yes, sir.

The Court: Present them.

(Thereupon counsel approached the Bench.)

(A jury was duly impaneled and sworn.)"

The transcript of record from the lower court contains a sheet entitled Questions on Voir Dire. Those questions were:

"1. Have you read any newspaper articles concerning the case, State of Maryland vs. Raymond John Anthony Gray?

2. After having read such article or articles, have you formed or expressed an opinion as to the guilt or innocence of the Defendant, Raymond John Anthony Gray?

3. Have you discussed with any person the guilt or innocence of the Defendant, Raymond John Anthony Gray?

4. Are you related to the prosecuting witness, William J. Cover or Gray?

5. In passing upon the evidence in this case, if you are selected as a juror, could you give the benefit to the Defendant here of a reasonable doubt and determine from all the evidence whether he is innocent or guilty?"

It is thus not clear whether the questions listed were the ones submitted by defense counsel or whether they were actually employed by the trial judge in examining the prospective jurors on their *voir dire*. Since no complaint is made by the appellant of any refusal to ask the questions listed, we will assume that they were the ones presented and propounded, and that the answers received were satisfactory to all counsel in the case.

The appellant contends that the two newspaper articles, which were filed with the motion at the time it was argued were prejudicial to him because they show that Gray pleaded *guilty* to the second count of the information charging receiving stolen goods, after this Court had reversed his previous convictions. The articles, which are contained in the transcript as defendant's Exhibits "A" and "B", were published in the Cumberland News and Evening Times, Cumberland, Maryland, on March 10, 1960. In reviewing the correctness of the Court's ruling on the motion for removal it becomes necessary to examine the contents of the articles. For the sake of some brevity, since the article published in the Evening Times is apparently a rewrite of the one published in the Cumberland News and adds nothing to what was contained in Exhibit "A", the second article will be considered as encompassed by the first. Defendant's Exhibit "A" is as follows:

"The Cumberland News, Cumberland, Md.
Thursday, March 10, 1960
Confusion Ends: Gray Awaits Third Trial
Judge Refuses Stolen Goods Plea

"Another confusing episode in the case against Raymond John Anthony Gray, 36 year old former local man, was unfolded yesterday afternoon in Allegany County Circuit Court, but when it was all over he was still awaiting a third trial on an armed robbery charge.

"Gray, through his court-appointed attorneys, Harold E. Naughton and Earl E. Manges, appeared in court about 1:30 p. m., and pleaded guilty to the second count of the criminal information a charge of receiving stolen goods. Chief Judge Morgan C. Harris then proceeded to sentence Gray to the maximum sentence, 10 years in the Maryland Penitentiary. That was the sentence he twice before had received for armed robbery. Both times the Maryland Court of Appeals set aside the conviction and granted Gray a new trial.

*"Checks Record*

"Later, after returning to chambers, Judge Harris began to consider the implications of the guilty plea. In checking the record on Gray's second trial, conducted last May 13, he discovered that the jury had found Gray guilty of armed robbery and not guilty of the two lesser counts of the information, receiving stolen goods and assault.

"Consequently, State's Attorney James S. Getty, Assistant State's Attorney Donald W. Mason and the two defense attorneys were called back to the Court House about 2:30 p. m., Gray was brought to the court room from the County Jail, where he had been since Monday night.

"In court for a second time about 2:48 p. m., Judge Harris issued a brief statement explaining the situation. Having once been found not guilty of receiving stolen goods, Gray could not now plead guilty to the charge. Otherwise, a question of double jeopardy would be raised.

*"Court Rules Cited*

"Judge Harris stated that he was convinced this

was not a trick pleading on the part of the defense attorneys. Nevertheless, he said it would be improper to accept such a plea. He then explained that in accordance with Maryland Criminal Rules Nos. 724 and 744, he was correcting the situation.

"Rule 724 concerns the refusal to accept a plea of guilty and No. 744 gives the court the right to correct an illegal sentence. Because Gray had once been acquitted of receiving stolen goods, the sentence earlier yesterday was illegal.

"After that statement, Mr. Getty withdrew his motion for dismissal of the first count of the information which charged armed robbery.

"The defense attorneys similarly withdrew their plea of guilty to receiving stolen goods. When Gray expressed unwillingness to plead guilty to armed robbery, pleading not guilty, Judge Harris postponed the trial until such time as Gray will be physically able to be tried. That is not expected for about a month.

*"Undergoes Operation*

"Gray underwent a gall bladder operation and an appendectomy several weeks ago in Baltimore. No one here was informed of the recent operations until after Gray arrived here Monday night with a State Penitentiary guard. He became ill Tuesday when the third trial was scheduled to start and as a result there was a postponement until yesterday.

"The former local man then living in Baltimore, was first tried in Allegany County Circuit Court October 17, 1958. That was a nonjury trial before Judge Harris, who found Gray guilty of armed robbery of William Jackson Cover, South Cumberland service station operator, from whom $350 was taken on Shade's Lane on September 11, 1958. He was sentenced that day to 10 years in the Maryland Penitentiary and has been confined there ever since.

"When the Maryland Court of Appeals reversed that first conviction, a second trial was conducted

May 13, 1959, and a jury in the same court convicted Gray a second time of armed robbery. Again the Court of Appeals reversed the conviction and the stage was set for the third trial, now postponed at least a month.

"Gray was returned to the State Penitentiary last night by a Penitentiary guard who boarded a Baltimore and Ohio Railroad train with him. At the time of his first trial some 17 months ago, Gray weighed about 200 pounds. Yesterday his weight was down to only 140 pounds.

\*\*\*\*\*

"Howard M. Iser, 37, former local man, also is serving a 10-year sentence for armed robbery. He received an additional three years for jail break after his recapture in Alabama following his escape from the County Jail."

The appellant argues that this publicity prejudiced him as he could not be tried by a fair and impartial jury. He relies upon *Newton v. State,* 147 Md. 71, 76, 127 Atl. 123, where it is stated:

"That everyone charged with a crime against the laws of this State has the absolute and unqualified right to have his case heard by a fair and impartial jury is not to be doubted, and that that right is one of the most valuable privileges guaranteed to the citizen by the Constitution of this State is not to be questioned."

The right of removal in criminal cases is not absolute except in capital cases, but is controlled by Article IV, Section 8 of the Maryland Constitution. This section provides that in addition to a suggestion that the accused cannot have a fair and impartial trial in the court in which the case is pending, "it shall be necessary for the party making such suggestion to make it satisfactorily appear to the Court that such suggestion is true, or that there is reasonable ground for the same, * * *." The question before the Court is therefore whether the trial court abused its discretion in refusing the

requested removal. The cases in this State hold that newspaper disclosures standing alone and without an affirmative showing of prejudice do not support a traverser's contention that such disclosures deny him a fair trial. *Piracci v. State,* 207 Md. 499, 115 A. 2d 262; *Grammar v. State,* 203 Md. 200, 100 A. 2d 257; *Wanzer v. State,* 202 Md. 601, 97 A. 2d 914; *Larch v. State,* 201 Md. 52, 92 A. 2d 463; *Baltimore Radio Show v. State,* 193 Md. 300, 67 A. 2d 497; *Newton v. State,* 147 Md. 71, 127 Atl. 123; *Tidewater Portland Cement Co. v. State,* 122 Md. 96, 89 Atl. 327; *Downs v. State,* 111 Md. 241, 73 Atl. 893.

The reports of the articles appear to be factual disclosures and are devoid of any showing of public indignation or prejudice in the case. No other facts were adduced to support his contention that it would be impossible to secure a jury to hear the case because of wide publicity. Indeed it might be said that the contents of the articles, if they had been read by any of the jurors, might have elicited sympathy for the accused and thereby have benefited him. The appellant in this case chose to be tried by a jury and if the questions and answers on the *voir dire* examination did not adequately cover the matter of freedom from prejudice, he might have submitted other questions. We, therefore, must conclude from this record that the trial judge did not abuse his discretion in denying the motion for removal.

The appellant's second contention is that the trial court erred in refusing to grant a directed verdict on the ground that the evidence was not legally sufficient to go to the jury in that there was no corroboration of the testimony of the accomplice Alma Johnson. We find no merit in this contention. This Court said in *Judy v. State,* 218 Md. 168, 176, 146 A. 2d 29, that:

"(i)t is not necessary for corroborating testimony to be sufficient in itself to convict" and that "it need only support some of the material points of the accomplice's testimony."

In *Wright v. State,* 219 Md. 643, 650, 150 A. 2d 733, in a full discussion of the subject, it was said:

"When the rule is thus restated, it still appears that not much in the way of corroboration is required and that it is not necessary in and of itself for the corroborative evidence to be sufficient to convict, yet the corroborative evidence must support the testimony of the accomplice as to some of the material facts tending to show that the accused was either identified with the perpetrators of the crime or had participated in the commission of the crime itself. Whether the testimony of an accomplice has in fact been sufficiently corroborated must, of course, depend upon the facts and circumstances, and the inferences deducible therefrom, in each case."

Alma Johnson testified that she had come to Cumberland with the appellant from Baltimore and that they stayed at the home of the appellant's sister. She testified that the appellant and Mr. Iser had prearranged the robbery and that she was to meet Mr. Cover in a restaurant and to get him out of the restaurant so that the appellant and Mr. Iser could follow them. On the evening of September 10, 1958, Mrs. Johnson testified, Mr. Cover was pointed out to her by Mr. Iser as he was entering Katie's Restaurant and she then went into the restaurant where she engaged Mr. Cover in conversation and stated that she would like to get to the State Line Inn. Mr. Cover said that he would take her. When Mr. Cover and Mrs. Johnson came out of Katie's Restaurant they were followed by the appellant and Mr. Iser. Mrs. Johnson testified that she saw the appellant's car when they started to drive away and that she saw the car lights continuously behind their car. Mr. Cover took Mrs. Johnson to the State Line Inn where she saw the appellant and Mr. Iser in the bar. She told the appellant and Mr. Iser that she was not going to go through with it, and they told her that nothing would happen and to let things go as they planned.

When the State Line Inn closed Mrs. Johnson and Mr. Cover started back to Cumberland. When Mrs. Johnson and Mr. Cover got to Shade's Lane, Mr. Cover stopped the car stating that he would like to get better acquainted and it was then that Mrs. Johnson began to get sick. She testified that

someone pulled the door open on the driver's side and smashed the window. She then jumped out of the car and found the appellant's car, which was the only car in the vicinity, and she got in the back. The appellant and Mr. Iser came back, got in the car and started back to Cumberland and on the way Mrs. Johnson testified that a gun which she described as a "big gun" was thrown out of the window by Iser. Mrs. Johnson testified that when they returned to the appellant's sister's house that the appellant and Mr. Iser counted the money which seemed to be close to $400.00 and there was a wallet and a check. She testified that she got about $35.00.

John Stankan, owner of the State Line Inn, testified that the appellant and another man were in the Inn the night of the robbery drinking beer at the bar, while Mrs. Johnson was with Mr. Cover, the victim, in the other room.

William J. Cover testified that during the early morning of September 11, 1958, he was assaulted and robbed. He testified that the evening before, he stopped at Katie's Restaurant in South Cumberland and happened to meet Alma Mabel Johnson. He testified that Mrs. Johnson asked him how far it was to the State Line Inn. Mr. Cover testified that he drove Mrs. Johnson to the State Line Inn. While in the Inn, Mr. Cover testified that Mrs. Johnson left the table and went up along the front of the bar. After a few beers at the Inn, Mrs. Johnson asked to be driven back to Cumberland which Mr. Cover did. Mr. Cover testified that on the way back to Cumberland, Mrs. Johnson said she felt sick and he pulled the car over and stopped. On cross examination he said that he may have suggested stopping. Mr. Cover testified that in a couple of minutes two men came up the road with flashlights and opened the car door. They grabbed the door and jerked it open and told Mr. Cover to get out. However, Mr. Cover shut the door and latched it and when he did someone rammed a shotgun through the window of the car. One of the men hit Mr. Cover under the eye with the butt of a shotgun. The men ordered Mr. Cover out of the car, hit him and Mr. Cover ran down the road but the men knocked him to the ground and beat him. Mr. Cover testi-

fied by this time Mrs. Johnson had gotten out of the car and ran in the opposite direction. They then robbed him of about $350.00 cash and a check and ran in the same direction that Mrs. Johnson had run. Mr. Cover testified that he could not see the men who robbed him but he identified the voice of one, Howard Iser, whom he had known before the robbery. They left him lying on the road but he was able to get to his car and make it to a police station where he was taken to the hospital.

Francis C. Davis testified that he was in Katie's Restaurant when Mrs. Johnson came in and asked how far it was to the State Line Inn. He testified that when he left the restaurant he saw a car without any lights parked across the street. This car pulled out, still without lights, and made a left-hand turn. He then saw Mr. Cover and Mrs. Johnson leave the restaurant and drive away with a suspicious looking car following them. Mr. Davis testified that there were two men in the front seat of the second car. He took the license number and it developed that the car belonged to the appellant, Raymond J. A. Gray.

Carl E. Robinette testified that on the morning of September 11, 1958 in the vicinity of the 300 block of Bedford Road, he found a shotgun lying alongside of the road. The gun was broken and he kicked it off the road into the grass.

Members of the County and State Police testified that pieces of the shotgun were found near the vicinity of the robbery and a piece of the gun was found in Bedford Road. When these pieces were put together they formed a complete shotgun.

It thus appears that there is ample evidence in the record to support the testimony of the accomplice as to some of the material facts tending to show that the appellant was either identified with the perpetrator of the crime or had participated in the commission of the crime itself. Such corroboration was legally sufficient to convict the appellant as there was evidence to show that the appellant was with the identified robber, Howard Iser. For these reasons the evidence was legally sufficient to warrant submission of the case to the

320

jury, whose duty it was to determine the weight of the evidence.

*Judgment affirmed.*