## FORRESTER *v.* STATE

[No. 138, September Term, 1960.]

338

*Decided February 20, 1961.*

*Petition for stay of mandate filed March 13, 1961, granted March 16, 1961, and mandate stayed for thirty days pending the filing of an application for a writ of certiorari in the Supreme Court of the United States and until final decision by that Court.*

The cause was argued before HENDERSON, HAMMOND, PRESCOTT, HORNEY and MARBURY, JJ.

*Bernard J. Flynn* for the appellant.

*Clayton A. Dietrich, Assistant Attorney General,* with whom were *C. Ferdinand Sybert, Attorney General, Saul A. Harris, State's Attorney for Baltimore City,* and *Joseph G. Koutz, Deputy State's Attorney for Baltimore City,* on the brief, for the appellee.

PRESCOTT, J., delivered the opinion of the Court.

The appellant, Clarence O. Forrester, was a member of the Baltimore City Police Department for many years. Start-

ing at the bottom of the ladder, he rose through the ranks until he occupied the position of an Inspector. After being jointly indicted with one Hyman Goldstein, a Lieutenant of said Police Department, he was tried and convicted of malfeasance in office by a judge of the Criminal Court of Baltimore, sitting without a jury, and sentenced to eighteen months' confinement in the House of Correction. From his said conviction and sentence, he has appealed.

Specifically, the indictment charged him with having wilfully disregarded his duties as Inspector by having suppressed, withheld and misrepresented facts relating to a case then pending before the Criminal Court of Baltimore, said case being that of the State v. Phyllis Wright, and by having encouraged, permitted, allowed and otherwise assisted the said Phyllis Wright to commit acts of adultery, prostitution and similar offenses.

Although the record is quite voluminous, it would serve no useful purpose to set forth the lurid details of the case at great length, in view of its posture as it reaches us. The trial court filed a long, well-considered opinion, which disposed of many of the controversial aspects of the matter. The appellant now raises five questions, none of which is difficult to answer.

The State adduced evidence tending to establish the following facts: The appellant and his codefendant, Goldstein, both married men, participated, on September 26, 1956, in a raid upon the premises occupied by Phyllis Wright. On November 7, 1956,[1] she pleaded guilty before Judge Mason of maintaining a disorderly house and prostitution. Judge Mason imposed sentence, suspended it, and placed her on probation.

Shortly after her conviction, Phyllis Wright met one Albert Weinstein, a close friend of the appellant and Goldstein. Weinstein introduced her to Goldstein and Forrester. Soon a furtive, clandestine agreement was entered into by the three

---

1. There is some confusion in the testimony concerning when the appellant met Phyllis "socially," in relation to her time of "trial." This apparently is due to the fact that she pleaded guilty sometime during October, and then, on November 7th, she was permitted to withdraw the former plea and her case was finally disposed of.

men and Phyllis Wright: in return for their assistance and protection, they would receive sexual gratification from her. To this end, the three men set her up in an apartment, for which they paid $120.00 rent per month. They also gave her groceries, purchased furniture and clothing for her, had a telephone installed, and arranged for her medical treatment. Several parties were held at the apartment. On one occasion, the three men took a trip with her and one Rhoda Bosley to a night club in Washington, returning to the apartment at about 2:00 A.M. There was testimony to the effect that Phyllis Wright had sexual relations with each of the three men on numerous occasions, and the trial judge found this to be a fact. In addition, the judge also found that sexual relations were had between other men and other women, at the apartment in the presence of the appellant.

The appellant denied that he ever had sexual relations with Phyllis Wright. He stated his reasons for his association with her were that he was setting up police headquarters (at her apartment) in the northwestern section of the City, where some well-known criminals were beginning to operate, and that he was receiving information from her relative to an unsolved famous murder case—reasons that failed to impress the trial judge.

On December 28, 1956, the appellant and Goldstein went to the chambers of Judge Mason, and succeeded in having Phyllis Wright's probation rescinded.

With this brief summary of the general background of the case, we proceed to the specific questions raised by the appellant.

## I

He first claims that "the trial court erred in permitting the witness, Phyllis Wright, to testify * * * without first advising her of her rights against self-incrimination," and does not cite a single authority to support the proposition. In addition, the motion, as actually made, requested that the witness "be required to sign a waiver of prosecution on the ground that if she testifies to anything she may be convicted for that she waives her right as to immunity." The court overruled this motion, but stated that if any questions were

asked the witness that might incriminate her, which were not outlawed by limitations, he would inform her of her rights against self-incrimination.

We recently had occasion to go rather thoroughly into the subject of the admissibility (over objection by the defendant) of the testimony of a witness that possibly would criminate the witness, in *Butz v. State,* 221 Md. 68, 156 A. 2d 423. After reviewing the Maryland decisions upon the subject and the authorities elsewhere, we held that the privilege against self-crimination is a personal one and must be asserted by the witness, as the privilege belongs to the witness and not to the defendant; and the testimony of a witness, who has a proper claim of privilege, is not subject to objection on the ground of privilege at the instance of the accused, but is competent evidence and admissible against him, if material. And the Court stated in *Raymond v. State,* 195 Md. 126, 129, 72 A. 2d 711, that it is no right of an accused, when an accomplice (we do not hold in the instant case that Phyllis Wright was an accomplice of the appellant) is called as a witness against him, to have that accomplice informed of his constitutional right to claim immunity from testifying on the ground that such testimony might incriminate the witness. See also 8 Wigmore, *Evidence* (3rd Ed.), Secs. 2196, 2269 and 2270. We find no error in this ruling of the trial court.

## II

Phyllis Wright testified that she had sexual relations with Goldstein at her apartment before her trial. The appellant contends this testimony was irrelevant and its admission constituted reversible error, because the acts took place out of his presence. Although the record does not make it perfectly clear that this testimony was objected to, we shall assume that it was. We find it unnecessary to decide the question, for the same witness testified, without objection, on, at least, two subsequent occasions to the same fact. In *State Roads Comm. v. Bare,* 220 Md. 91, 94, 151 A. 2d 154, we called attention to the provisions of Maryland Rule 522 (d) (2), and stated that a long line of decisions in Maryland had established the rule that it is not reversible error to overrule an objection

to inadmissible testimony if the witness had previously testified to the same effect without objection, and the same rule applies when the inadmissible testimony is admitted without objection after a previous objection and an adverse ruling on the objection. And we gave the reasons for the rule. Hence, if we assume without deciding that the evidence was inadmissible, any objection to its admission was waived by its subsequent admission without objection.

III

The appellant's third contention has two thrusts: (a) that the court erred in refusing to grant his motion for a directed verdict at the close of the State's case, and (b) in finding him guilty, as the only testimony produced on behalf of the State that implicated him "in any manner that could be considered a violation under the indictment was the testimony of Phyllis Wright, who was an accomplice."

(a)

When Forrester offered evidence after his motion for a directed verdict was denied at the close of the State's case, he had a choice as to his course of procedure. He could have declined to offer any additional evidence, in which event the sufficiency of the evidence to justify and support a conviction would have been weighed and determined upon the State's evidence, alone. On the other hand, he had a right to adduce evidence in his own behalf, which he did, and he thereby withdrew his motion, Maryland Rule 741 (b), which simply means that in weighing the sufficiency of the evidence to convict, the trial court considers all of the evidence produced by both parties, and not that produced by the State, alone. *Elliott v. State,* 215 Md. 152, 159, 137 A. 2d 130. And the same thing applies, in the event of an appeal, when the Court of Appeals is called upon to determine the sufficiency of the evidence to support a finding of guilt by the trial court. As the case was tried by the court, sitting without a jury, the appellant's failure to renew the motion at the close of all the evidence does not preclude a review upon both the law and the evidence, Maryland Rule 741 (c), *Elliott v. State, supra;* hence we must consider and determine (b).

## (b)

This contention, insofar as it claims that Phyllis Wright was an accomplice of Forrester seems to be raised here for the first time. The original motion was based upon the alleged insufficiency of the claimed-to-be uncorroborated testimony "of two convicted prostitutes." At this point, the appellant does not urge the general insufficiency of the evidence to support a finding of guilt, but contends that the testimony of Phyllis Wright, who was an accomplice of Forrester, was not corroborated; consequently his conviction was not warranted, and should not be permitted to stand. It may be conceded that a person accused of crime may not be convicted on the uncorroborated testimony of an accomplice. *Watson v. State,* 208 Md. 210, 217, 117 A. 2d 549. Also, we may assume, without deciding, that Phyllis Wright was an accomplice of the appellant,[2] and still there was, we think, clearly sufficient corroboration of her testimony to sustain a finding of guilt. When an accomplice's testimony is corroborated, "too much in the way of corroboration" should not be required. *Luery v. State,* 116 Md. 284, 294, 81 A. 681. The corroboration need not extend to every detail, *Novak v. State,* 214 Md. 472, 478, 136 A. 2d 256, for the obvious reason that if it be necessary to produce sufficient evidence to convict, exclusive of that of the accomplice, there would be little, if any, purpose in offering the testimony of the accomplice. As stated by Judge Horney for the Court, in the comparatively recent case of *Judy v. State,* 218 Md. 168, 176, 146 A. 2d 29, "it is not necessary for corroborating testimony to be sufficient in itself to convict. Instead it need only support some of the material points of the accomplice's testimony." See also *Wright v. State,* 219 Md. 643, 650, 150 A. 2d 733.

We shall now set forth some of the facts testified to by Phyllis Wright that were corroborated.

Phyllis testified that the appellant, Goldstein and Weinstein were equal partners in paying her personal expenses. This

---

2. Compare, *Roddy v. Finnegan,* 43 Md. 490, 503-504, and *Watson v. State, supra,* wherein are discussed principals, accessories and accomplices in cases of misdemeanors and felonies.

received support in Bosley's testimony that the three men had keys to Phyllis's apartment, and the appellant's admission that he gave Phyllis both cash and checks. Phyllis said that the furniture for her Green Acres apartment came from Highlandtown. This was corroborated by the witness McNamara who testified that Weinstein paid for the furniture which was purchased from his employer's Highlandtown store. Phyllis stated that the appellant instructed her to sign the Green Acres apartment lease with a false name. This was consistent with the witness Shaw's testimony that the girl and two men were in the office at the time the lease was signed in the name of Miller, and the appellant's admission that Weinstein used the pseudonym of Miller in leasing the apartment. Phyllis also testified that the appellant had relations with her at the Green Acres apartment. This was supported by the witness Gable's testimony that she saw the appellant and Phyllis together socially at the Green Acres; by Bosley's testimony that she also saw the two together socially at the Green Acres; and by the appellant's admission that he helped to move Phyllis to the Green Acres and that he was present at parties at the apartment. Phyllis said she had relations with the appellant after an automobile trip to a Washington night club. This was corroborated by Bosley's testimony that she saw the appellant and Phyllis in bed together at the Lakeview apartment after the trip and the appellant's admission that he made the trip and returned to the apartment thereafter.

Phyllis further testified that the appellant helped to move her from the Green Acres apartment to Rexmere Road. This was corroborated by the witness Meekin's testimony that he saw a man, of similar description to the appellant, when he moved the furniture into the Rexmere residence; the witness Hall's testimony that she saw the appellant offer Phyllis money at the time of the move; and Bosley's testimony that she saw the appellant at the Rexmere residence on the day of the move. Phyllis also claimed that the appellant had relations with her at the Rexmere residence. This was corroborated by Bosley's testimony that she authorized Phyllis to use the basement for that purpose, and is consistent with the appel-

lant's admission that he had gone, at least once, to the Rexmere residence. Phyllis further testified that the appellant had told her that her probation would be rescinded. This was corroborated by Judge Mason's testimony that he relied on the recommendation of the appellant and Goldstein in rescinding the prostitute's probation and the appellant's admission that he had seen Judge Mason on the subject. Phyllis said that the appellant had discussed, in her presence, the fact that the Police Commissioner was aware of the rumors that the appellant was having an affair with the prostitute. This is consistent with Commissioner Hepbron's testimony that he told Inspector Ford of the rumor, Ford's testimony that he had received the rumor from Hepbron, and the appellant's admission that he had seen Phyllis in disobedience to Hepbron's instructions.

Further, Phyllis stated that she had a wart removed from her lip by a physician acquaintance of the appellant. This was corroborated by the testimony of Dr. Applefeld that he had received a call on the subject from the appellant. She also testified that the appellant had her misrepresent herself as a police woman in order to obtain a discount at a clothing store. This was corroborated by the witness Sobel's testimony that the appellant had sent a Terry Miller (Phyllis) to the store.

As indicated above, this, we think, is amply sufficient evidence to corroborate the (assumed) accomplice, and support the trial court's finding of guilt.

## IV

The appellant next claims error in that there was no sufficient evidence to find him guilty "of the charge that he had *misrepresented,* (emphasis added), facts relating to a case pending before the Criminal Court * * *." He points out several inconsequential inconsistencies in the State's testimony, and also calls attention to several contradictions of some of the State's witnesses by a defense witness, relative to the appellant's interview with Judge Mason concerning Phyllis Wright's probation being rescinded.

The trial judge did not find that Forrester had misrepre-

sented facts. He found that Forrester "deliberately and intentionally suppressed facts and misled the court in regard to the striking of the probation of Phyllis Wright"—a finding that was fully justified by the testimony.

Judge Mason testified that Forrester and Goldstein came to his office (he did not remember the exact date) and asked him if he would strike out the order of probation in Phyllis' case, as they, Forrester and Goldstein, thought it would be the right thing to do. He did not recall which one told him, but they said she could get a better job if she did not have to explain about probation every time she made application for employment. The judge asked, "Is she doing all right?" and he was told that she was. Whereupon, the judge struck out the probation. This was done on, or about, December 28, 1956, at the very time that Forrester and his companions were maintaining and keeping this woman in an apartment for the purpose of having illicit relations with her. The visit to the judge's chambers was admitted by the appellant, and confirmed by several other witnesses, and Phyllis Wright testified that Forrester told her that he was going to have the probation stricken out. From the above, it should be clear that we certainly cannot say the trial judge was clearly erroneous in his finding of facts relative to this contention of the appellant. Maryland Rule 886 (a).

## V

This brings us to the final question raised by the appellant. During the course of his trial, he had tried to establish the fact that certain people were trying to "get" him, *i. e.,* to have him removed from office. Inspector Ford was called to the stand and testified that sometime during August, September or October, 1956, in his presence, Forrester's and the presence of other members of the department, in Forrester's office in the Police Building, there had been played a tape, which had reproduced recorded wire-tapped conversations between one Benny Trotta and Cappy Goldstein. His testimony was to the effect that this was a dictation recording tape (dictabelt) and a permanent record of the Police Department, made in the normal course of business of said De-

partment. The Inspector was asked to relate what the conversations were, and, upon objection by the State, the objection was sustained.

The ruling of the court was clearly correct for several reasons. We shall lay aside any consideration of Code (1957), Article 35, Section 97, as well as the relevancy, *vel non,* of the conversations. Since the tape that was obtained by wire tapping was not made in the presence of the Inspector and he did not claim to recognize any of the voices heard therefrom, his answer to the question, if permitted to be given, would obviously have been hearsay. And, as no effort was made to produce the original tape, nor any explanation offered for its nonproduction, the answer called for, if allowed, would have violated the best evidence rule. The best evidence of which the case is capable must be produced, and secondary, or inferior, evidence is only admissible after a proper foundation has been laid, showing good and sufficient reasons for the failure to produce the primary evidence. *Corens v. State,* 185 Md. 561, 569, 45 A. 2d 340; *Gray v. State,* 181 Md. 439, 443, 30 A. 2d 744; *Barranco v. Kostens,* 189 Md. 94, 97, 54 A. 2d 326. 4 Wigmore, *Evidence* (3rd Ed.), Section 1182. In *McGuire v. State,* 200 Md. 601, 606, 92 A. 2d 582, the Court assumed that a recording tape would have been the best evidence of certain conversations, and sustained the admission of a stenographic transcript of the recording, after a showing that the machine that reproduced the conversations had been repaired, and, after repair, it could no longer do so. Again, we find no error.

*Judgment affirmed, with costs.*