# FOSTER *v.* STATE

[No. *70,* September Term, *1962.*]

(Two Appeals In One Record)

*Decided December 13, 1962.*

The cause was argued before Brune, C. J., and Henderson, Prescott, Horney and Sybert, JJ.

*George L. Russell, Jr.,* with whom was *Charles H. Dorsey, Jr.,* on the brief, for appellant.

*Robert C. Murphy, Assistant Attorney General,* with whom were *Thomas B. Finan, Attorney General, William J. O'Donnell, E. Thomas Maxwell, Jr.* and *John P. Rogers, State's At-*

*torney,* and *Assistant State's Attorneys,* respectively, of Baltimore City, on the brief, for appellee.

HORNEY, J., delivered the opinion of the Court.

The defendant (Lindsey Calvin Foster, Jr.) was convicted by the Criminal Court of Baltimore sitting without a jury of two conspiracies under separate indictments, and has appealed.

### The Conspiracy To Kidnap

Under one indictment (No. 2605/61), the defendant was charged with conspiring with Alfred Pittore and others to carry (*i.e.,* kidnap) Edward L. Corbi within the State.

The record shows that James Ball testified that following a meeting between Ralph Norton, Pittore and the defendant at the home of the latter, all of them, including Ball, proceeded in two cars to Market Place in downtown Baltimore as planned. On the way, the defendant, who was riding with Ball, told him that he was "leery of snatching Corbi." At the rendezvous, Norton described Corbi to all present, and Ball left to go to Corbi's restaurant, apparently to reconnoiter the situation. Later when Ball informed the defendant that Pittore and Norton had disagreed about something and were not going through with the kidnapping, the defendant responded that he was through too. And when Pittore suggested that the remaining three go to Corbi's home, Ball and the defendant declined. Ball admitted that he and Pittore had done some planning, but stated, that to his knowledge, there had been no agreement between the other conspirators and the defendant. In a statement made to the police, the defendant confessed his participation in the conspiracy.

In this case, it is contended that the conviction cannot be sustained because the only evidence the State produced to prove the *corpus delicti,* other than the confession of the defendant, was the uncorroborated testimony of an accomplice and co-conspirator. The contention is wholly without merit. The evidence apart from the confession need not establish the *corpus delicti* beyond a reasonable doubt. And such other evidence is sufficient if, when considered in connection with the confession, it

satisfies the trier of facts beyond a reasonable doubt that the crime charged was committed and that the accused committed it. *Pierce v. State,* 227 Md. 221, 175 A. 2d 743 (1961) ; *Hall v. State,* 213 Md. 369, 131 A. 2d 710 (1957) ; *Bollinger v. State,* 208 Md. 298, 117 A. 2d 913 (1955). And while an extrajudicial confession does not warrant a conviction unless there is also independent evidence tending to establish the *corpus delicti,* the identity of the accused as the offender is not a necessary element of the corroboration. *Weller v. State,* 150 Md. 278, 132 Atl. 624 (1926). Moreover, the testimony of an accomplice is admissible to prove a conspiracy and such evidence may be corroborated by the confession of the defendant. *Garland v. State,* 112 Md. 83, 75 Atl. 631 (1910). As to the contention that the *corpus delicti* should have been proved before the confession was received as evidence, the short answer is that the confession came in without objection. See Maryland Rule 522 d 2. And, in any event, the order of proof is largely a matter within the discretion of the trial court. *Bollinger v. State, supra.*

### The Conspiracy To Rob

Under the other indictment (No. 3307/61), the defendant was charged with conspiring with Alfred Pittore, George Barry, Ralph Norton and others to rob Frank Speca with a dangerous and deadly weapon.

The record discloses that Speca, who was accustomed to carrying large sums of money and had been previously robbed, testified that he had received a telephone call at a public booth from a man (then unknown to him but later identified as the defendant), who told him that he would show him who had stolen his money on the prior occasion. In response to the call, Speca picked up the defendant and as directed drove to and parked on a vacant lot, where another man, after whistling to the defendant, came out of some bushes and joined them. Speca was then forced down a hill to a point under a bridge, where three other men, wearing steel helmets and brandishing revolvers, met them. The victim was robbed at gun point by the defendant (whom he subsequently identified at a police line-up) and the other conspirators and, during a scuffle that ensued, was

shot in the hand. Bernard Braxton, another state witness, testified that the defendant, on the day before the robbery, after telling him that he had been approached by a man who wanted some persons beaten, asked Braxton (in the company of Norton) to participate in the beatings, which he refused to do. In a statement to the police, the defendant admitted his participation in the conspiracy and robbery, and, in a subsequent statement, exonerated Braxton (whom he had named in the prior statement) from any complicity in either the conspiracy to rob or the robbery. Subsequently, the defendant showed the police where Speca had picked him up, the location of the vacant lot and the scene of the robbery under the bridge.

In this case, where it is contended that the State failed to sufficiently prove the *corpus delicti* to permit introduction of the statements made by the defendant, there was considerable other evidence to show that the defendant had entered into a conspiracy with others to rob Speca. In addition to the testimony of the victim as to the obviously planned appearances, on the parking lot and under the bridge, of the other participants in the scheme, the defendant had shown the police where the several events leading to the robbery had taken place; and there was also the testimony of Braxton, who was not a party to any of the transactions leading to the ultimate robbery, that he had been solicited by the defendant, in the presence of one of the conspirators, to participate in a beating of other persons. This evidence, together with the statements of the defendant, was enough to show that the defendant and the other participants in the robbery were engaged in the furtherance of a common objective. *Greenwald v. State,* 221 Md. 245, 157 A. 2d 119 (1960). A conspiracy may be shown by circumstantial evidence permitting an inference of a common design. *Piracci v. State,* 207 Md. 499, 115 A. 2d 262 (1955). Furthermore, although it is further contended that even if there was a conspiracy, it was not the one with which the defendant was charged (it being alleged that the plot was to extort money from the victim), there was sufficient evidence from which the trial court could find that the defendant was guilty of the offense charged in the indictment. Since there was such evidence, the rule

stated in *Adams v. State,* 202 Md. 455, 459, 97 A. 2d 281 (1953), that "the evidence must establish the conspiracy charged and not some other conspiracy," relied on by the defendant, was satisfied.

Finding no error in either case, the judgments will be affirmed.

*Judgments affirmed.*