## McDOWELL *v.* STATE

[No. 199, September Term, 1962.]

*Decided April 2, 1963.*

The cause was argued before BRUNE, C. J., and PRESCOTT, HORNEY, MARBURY and SYBERT, JJ.

*Albert A. Levin,* for appellant.

*Herbert L. Cohen, Special Attorney,* with whom were *Thomas B. Finan, Attorney General, William J. O'Donnell* and *Abraham Adler, State's Attorney* and *Assistant State's Attorney,* respectively, for Baltimore City, on the brief, for appellee.

BRUNE, C. J., delivered the opinion of the Court.

The appellant, McDowell, was convicted of arson in the Criminal Court of Baltimore in trial before the court, sitting without a jury. He appeals and contends first, that the evidence as a whole was insufficient to support his conviction, and second, that even if the evidence were otherwise sufficient, the conviction cannot stand because it is based upon the testimony of an accomplice which is not sufficiently corroborated.

A fire occurred at about 6:30 P.M. on January 3, 1962, in a second floor apartment at 800 Reservoir Street, Baltimore, which had been rented to Aldrich, and was occupied by him and McDowell, the latter being a subtenant. Aldrich was in arrears on his rent due the landlord; McDowell was substantially up to date on his rent due to Aldrich. On or about January 1, 1962, the landlord told Aldrich to pay up or get out, and Aldrich was to move out of the apartment by January 3rd. As a result, McDowell, too, was preparing to leave, and planned to move at least temporarily to the home of his sister who lived nearby. (At one point he said that he was to have the Reservoir Street apartment after Aldrich left. Why he should leave at all in those circumstances is not explained.)

There is no serious question, if any at all, as to proof of the *corpus delicti.* The fire did occur, and there was expert testimony by a Captain of the Fire Investigation Bureau that it was not due to spontaneous combustion or faulty wiring or to "natural causes." There had, indeed, been a number of separate fires. The inference is clear that they had been wilfully and maliciously set. See 1 *Wharton's Criminal Evidence* (12th Ed., Anderson, 1955), § 17, p. 48, as to proof of the *corpus delicti* generally, and Code (1957), Art. 27, § 6; *Wimpling v. State,* 171 Md. 362, 189 A. 248, as to the wilful and mali-

cious burning of a dwelling. Cf. *Bollinger v. State*, 208 Md. 298, 117 A. 2d 913, involving the burning of a barn and arising under § 7 of Art. 27. As Wharton points out "[p]roof of the defendant's connection with the crime as the operative agent, although essential for conviction, is not part of the corpus delicti."

The appellant's first contention—alleged insufficiency of the evidence as a whole—goes to the proof of his connection with the crime as an operative agent. Since the principal witness for the State was the accomplice, Aldrich, the questions of the sufficiency of the evidence and of the sufficiency of the corroboration of his testimony are closely related. The evidence showed that Aldrich had returned to the apartment at about six o'clock in the afternoon of January 3rd, that he found that the door to the apartment had been padlocked, that he broke the door open, entered and found some article or articles missing, and that he shortly afterwards left the apartment. Just how long he was in it alone is not clear, but it is clear that McDowell was not there with him. As Aldrich came out of the apartment, McDowell was coming, or had just come, in and was on the stairway, apparently at the top of the steps leading to the second floor, and was eating a sandwich. The two had some conversation in which Aldrich told McDowell of the padlocking of the apartment and of breaking the door open. According to Aldrich, McDowell inquired where he could get some gas and said, "we should burn the place down," and Aldrich told him to "go help himself." Aldrich said that he then went down the stairs and went to a public telephone booth about a block away to call the landlord, and that a few minutes later McDowell came running from the apartment and said "I got it going."

A plumber who had been called to open a stopped drain from a sink in one of the apartments arrived at or very soon after the time that Aldrich came out of the front apartment and inquired whether the trouble was in that apartment. Aldrich said that it was not and suggested that the plumber try the rear apartment, which he did. He said that he saw McDowell at the head of the stairs eating a sandwich, that he

saw Aldrich go downstairs, and that at that time he saw Mc-
Dowell still eating his sandwich at the top of the stairs at a
point twelve or fifteen feet from the door to the front apart-
ment. Some minutes later the plumber went down the stairs
and out to his truck to get some tools. As he went outside he
saw flames coming from the second floor front apartment and
called the fire department. The fire engines arrived in a very
few minutes.

Both Aldrich and McDowell testified that they were to-
gether after leaving the apartment, but their accounts differed
in some respects. The chief difference was that Aldrich said
that he went out first and McDowell said that they left the apart-
ment together. On this point the testimony of the plumber
supports Aldrich rather than McDowell.

Aldrich gave two quite different statements as to when he
had returned to the apartment from a trip to Connecticut. His
first statement was that he had returned early on January 3rd,
his second that he had returned on December 30th. He ex-
plained the difference as caused by confusion due to his hav-
ing his mind fixed on January 3rd, the date of his arrest. He
was arrested at a railroad station as he was about to return
to Connecticut. He had left most of his clothes in a suitcase
in a locker there for several days.

McDowell gave conflicting accounts about returning to the
apartment on the afternoon of January 3rd and about seeing
Aldrich there. At his preliminary hearing in the Municipal
Court he denied having been in the building at about the time
of the fire and denied having seen Aldrich at any time after
the morning of January 3rd. His testimony at the trial was
to the contrary as to each. The difference was not explained.

No one testified to seeing McDowell enter the apartment
in the late afternoon or early evening of January 3rd. Aldrich
said that he had not seen McDowell in the apartment, Mc-
Dowell denied that he had entered it, and the plumber had
not seen him enter it. McDowell testified that some clothing
belonging to him was on the landing at the second floor when
he was eating his sandwich. He denied having gotten this
clothing from the apartment, though he testified that he was

going there to get his clothes. Who put them on the landing, when they were put there, and what became of them are not shown. Aldrich denied having seen them.

McDowell was tried on a charge of burglary as well as arson. At the conclusion of the State's case, the court granted a defense motion for a directed verdict on the burglary charge and denied a similar motion on the arson charge. When McDowell took the stand in his own behalf, he admitted generally on direct examination and more in detail on cross-examination that he had been convicted of several offenses. One of them was burglary.

The trial judge who heard McDowell's case had tried Aldrich shortly before and had apparently found him guilty of arson under those provisions of § 6 of Art. 27 of the Code, above cited, which make anyone who aids, counsels or procures the burning of a dwelling guilty of arson as a principal. Aldrich was also convicted of burglary of the same premises. (We assume this grew out of his breaking in when he found the apartment padlocked, but this is not clear from the testimony in the appendix in this case.) The trial judge commented at the end of McDowell's trial that he had to determine whether he should believe McDowell or Aldrich, and he expressly stated that he believed Aldrich. He also recognized that he had to have something beyond Aldrich's statement to warrant a finding of guilt against McDowell.

Leaving to one side for the moment the question of corroboration, we think that the evidence and the inferences which might properly be drawn therefrom were sufficient to enable the trial judge to find McDowell guilty beyond a reasonable doubt of the crime of arson. Arson is likely to be a clandestine offense and proof of it must often be by circumstantial evidence and inferences which may reasonably be drawn therefrom. See *Bollinger v. State, supra,* 208 Md. at 306. Here we have McDowell within twelve or fifteen feet of the door to the apartment, the lock on which had been broken, so that there was no obstacle to his entry. We also have his statements to Aldrich indicating both a motive for committing the offense and an intention to commit it. There is no showing

that the fire had been started prior to the time when Aldrich left, but it was burning a little later—twenty to thirty minutes later, according to the findings of the trial judge. This was after McDowell had had the opportunity to enter the apartment and set it afire. The plumber's testimony indicates that Aldrich had left and that McDowell was still there alone a few feet from the unfastened apartment door. The proof of the *corpus delicti* was ample. Assuming for the moment that there was sufficient corroboration of the testimony of the defendant's accomplice, we cannot say that the trial judge who saw and heard the witnesses was clearly in error in finding McDowell guilty on the evidence before him and reasonable inferences therefrom. Such a finding on our part would be necessary to warrant us in reversing the conviction on the ground of insufficiency of the evidence. Maryland Rule 886 a; *Foster v. State,* 230 Md. 256, 186 A. 2d 619; *Espin v. State,* 230 Md. 298, 186 A. 2d 589; (to cite only two of many cases). The credibility of witnesses is primarily for the determination of the trier of facts. *McKenzie v. State,* 230 Md. 513, 514, 187 A. 2d 885.

We now reach the appellant's contention that the testimony of the accomplice Aldrich was not sufficiently corroborated and that without his testimony the evidence was insufficient to sustain the conviction. In *Luery v. State,* 116 Md. 284, 81 A. 681, this Court adopted the rule that the uncorroborated testimony of an accomplice is not sufficient to sustain a conviction. The rule has been so frequently restated by this Court since the decision that we think the citation of cases is unnecessary.

*Luery* posed the question, which has frequently recurred, as to how much is required in the way of corroboration of the testimony of an accomplice. It was there said (116 Md. at 294) that not "too much" should be required, that the corroboration need not be enough to convict exclusive of the accomplice's testimony, and that "the important matter is to have him [the accomplice] supported in at least some of the material points involved, tending to show the guilt of the accused." A generally similar statement based on *Luery* will be

found in *Wolf v. State,* 143 Md. 489, at 504, 122 A. 641. More recently the test has been stated in somewhat different words. In *Polansky v. State,* 205 Md. 362, at 367, 109 A. 2d 52, it is said that "there must be corroboration of the testimony of an accomplice as to the identity of the accused with the perpetrators of the crime or the crime itself." See also *Nolan v. State,* 213 Md. 298, at 309, 131 A. 2d 851. *Judy v. State,* 218 Md. 168, at 176, 146 A. 2d 29, holds that corroborating testimony "need only support some of the material points of the accomplice's testimony."

In *Wright v. State,* 219 Md. 643, 150 A. 2d 733, cert. den. 361 U. S. 851, the origin of the rule in this State and its history since *Luery* were carefully reviewed, and the court undertook to "discuss more fully what is meant by the phrase requiring corroboration of 'some of the material points involved.' " After referring to two leading textwriters and to the *Polansky* case, the opinion stated (219 Md. at 650) that "the corroborative evidence must support the testimony of the accomplice as to some of the material facts tending to show that the accused was either identified with the perpetrators of the crime or had participated in the commission of the crime itself." The opinion then pointed out that whether the test is met "must * * * depend upon the facts and circumstances, and the inferences deducible therefrom, in each case."

The *Wright* case like the instant case, involved a conviction for arson based upon the testimony of accomplices. The opinion enumerates various items of evidence corroborative of the accomplices' testimony. A number of them concerned matters not in themselves unlawful and some were described as corroborating "only the fact that the defendant had engaged in several lawful pastimes—such as going to the movies, eating watermelon and roaming the highways and byways late at night," yet these were held (citing *Polansky v. State, supra*) to afford corroboration as showing "that the defendant was identified with the admitted arsonists." Here the evidence of McDowell's presence, of his having to leave the apartment, and of his being the last person shown to have been in the immediate vicinity of the scene of the crime with both the op-

portunity and a possible motive to commit the offense serves as corroboration of the identification of the defendant with the commission of the crime, which is the other branch of the *Polansky* rule. There was also evidence corroborative of Mc-Dowell's association with Aldrich just before the fire and almost immediately after it. Aldrich's connection with the offense is shown by his conviction and is, of course, the foundation of the attack on his testimony as that of an accomplice.

The *Wright* case also stressed the fact that the testimony of the non-accomplice witnesses was consistent with that of the accomplices and inconsistent with that of the defendant. The same is true here of the testimony of the plumber that Aldrich left first and that McDowell remained only a few feet from the apartment. Another point noted as important in the *Wright* case (219 Md., at 651-52) was that the defendant made false statements with respect to his association with the accomplices a few minutes before the fire was set. A similar false statement exists here, to which is added a false statement (subsequently contradicted by the defendant's own testimony as well as by the accomplice and the non-accomplice witness) that the defendant had not been at the apartment building after the morning of the day of the fire.

The *Wright* opinion also cited authority (at p. 652 of 219 Md.) to the effect "that corroboration of a material point tending to connect the accused with the crime is sufficient for a jury to infer that the accomplice had testified truthfully even with respect to matters as to which there had been no corroboration." This statement was quoted with approval and was applied in *Mulcahy v. State,* 221 Md. 413, at 428, 158 A. 2d 80, and was cited and applied in *Boggs v. State,* 228 Md. 168, at 171-72, 179 A. 2d 338.

Corroboration need not extend to every detail. *Brown v. State,* 210 Md. 301, at 305, 123 A. 2d 324, and cases there cited.

Other more recent cases dealing with corroboration include: *Campbell v. State,* 221 Md. 80, 156 A. 2d 217; *Fulton v. State,* 223 Md. 531, 165 A. 2d 774; *Gray v. State,* 224 Md. 308, 167 A. 2d 865; *Forrester v. State,* 224 Md. 337, at 345-

47, 167 A. 2d 878; *Hardison v. State,* 226 Md. 53, 172 A. 2d 407; *De Hart v. State,* 227 Md. 239, 176 A. 2d 353; and *Foster v. State,* 230 Md. 256, 186 A. 2d 619.

Corroboration may, of course, come from the defendant himself. *Garland v. State,* 112 Md. 83, 75 A. 631; and the *Campbell, Mulcahy, Forrester, Fulton, Boggs* and *Foster* cases, just cited.

In an arson case the presence of the defendant in the vicinity of the fire, whether before or after its occurrence, is always relevant. *Bollinger v. State, supra,* 208 Md., at 307. Evidence as to malice or motive is also admissible in an arson case. *Hooker v. State,* 98 Md. 145, at 161, 56 A. 390. The relevance and admissibility of such evidence, of course, show its materiality. As to both presence and motive the defendant's testimony corroborates that of the accomplice. He was in the immediate vicinity of the fire shortly before it was set, and he was being put out of the apartment along with Aldrich.

The defendant's presence near the scene of the fire was also corroborated by the independent witness, the plumber, and so was the testimony of Aldrich that he left the place first and without McDowell.

In addition, there is evidence of contradictory and untruthful statements by McDowell relating to his whereabouts at the time of the fire and to his being or not being with Aldrich at about that time. Such statements may of themselves serve to corroborate the accomplice's testimony. *Fulton v. State; Wright v. State; Nolan v. State;* all cited above.

The most important corroborative evidence we think consists of that which (1) shows McDowell's presence, (2) suggests a motive for setting the fire, and (3) shows that Aldrich departed from the scene when the fire occurred, leaving McDowell at the scene. As to the last of these, as we have noted, the testimony of the nonaccomplice witness corroborated that of the accomplice and contradicted that of the appellant. At that time the appellant had ready access to the place where the fire soon afterwards appeared. All three of these matters were material, and the testimony of the accomplice was corroborated as to each of them, as to two of them by the defendant himself.

Under the tests laid down in the numerous cases above cited, particularly the *Wright, Mulcahy* and *Boggs* cases, we think that the testimony of the accomplice Aldrich was sufficiently corroborated to serve as a basis for the conviction of the appellant.

*Judgment affirmed.*

HORNEY, J., filed the following dissenting opinion.

Contrary to the opinion of the majority, it is my belief that the judgment should be reversed because the evidence relied on by the trial court to corroborate the testimony of the accomplice was too thin to support the conviction of the defendant under the circumstances.